Richard M. BARANCIK,
Plaintiff–Appellant,

v.

COUNTY OF MARIN and Al Aramburu; Gary Giacomini, Harold Brown, Robert Stockwell, Robert Roumiguiere, individually and as members of the Marin County Board of Supervisors, Defendants–Appellees.

No. 87–1982.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1988.

Decided June 30, 1988.

As Amended April 19, 1989.

Concurring Opinion April 19, 1989.

Brian W. Blaesser, Siemon, Larsen, Mattlin & Purdy, Chicago, Ill., for plaintiff-appellant.

Douglas J. Maloney, County Counsel, and Robert H. San Chez, Deputy County Counsel, San Rafael, Cal., Mark I. Weinberger, Alletta d'A. Belin, and Fran M. Layton, San Francisco, Cal., for defendants-appellees.

Before SCHROEDER, NOONAN and O'SCANNLAIN, Circuit Judges.

NOONAN, Circuit Judge:

Richard M. Barancik, owner of Loma Alta Ranch, challenged the zoning plan of Marin County as it applied to the ranch and on its face. The district court dismissed the facial challenge as barred by the statute of limitations. On summary judgment, the district court found the challenge not ripe for review and alternatively granted judgment for the County on the merits. Barancik appeals.

## FACTS

Loma Alta Ranch consists of 561 acres of a westerly-facing basin in Nicasio Valley, Marin County. The bowl is bounded on the north, east and south by a continuous ridge dominated by Loma Alta Peak. The property consists of a series of branching canyons with moderately to steeply sloping sides covered with grass. Loma Alta Peak, with an elevation of 1,589 feet is one of the highest peaks in the county; the ridge line of the ranch is visible from a variety of angles within the county. The ranch is now used for grazing for about 40 head of cattle.

In 1973 Marin County adopted its Countywide Plan rezoning properties in Central and Western Marin for conservation or agricultural uses. The Plan recommended zoning to a density of one residence per 60 acres in the area of Marin designated for agricultural use. The aim was to assure Marin ranchers that their operations would be protected from residential development incompatible with agriculture.

In 1976 the Cold Creek Land and Cattle Corporation proposed to divide the Loma Alta Ranch into four 140 acre lots. The proposal was denied by the Planning Commission of the County on the grounds that the geologically stable areas were along the ridge lines but development along the ridge lines was not in conformity with the Marin Countywide Plan; that the availability of water, of sewage and of fire protection was questionable; and that a three mile road would be required to provide access and the road would increase potential for landslides, erosion and sedimentation.

In 1979 the Marin County Board of Supervisors approved the Nicasio Valley Community Plan. The Plan was specific to Nicasio Valley and consistent with the Countywide Plan. The Plan celebrated Nicasio Valley as "a jewel" in California's "beautiful rural landscape." The Plan noted "the slow but pressing expansion of urban land uses" as affluent persons sought to buy residences in the valley. The Plan reaffirmed the valley's commitment to agriculture and to "the open spacious feeling of Western Marin." The Plan recommended that Loma Alta Ranch be rezoned to permit residential use but at a density of no more than one residence per 60 acres. The recommendation was adopted in 1979.

In 1981 the County Board of Supervisors adopted amendments to the Countywide Plan and the Nicasio Valley Community Plan. The amendments were entitled "Transfer of Development Rights." Directed specifically to the homogeneous community of Nicasio Valley, the amendments treated the valley "as one complete land forum, one large property to be sensitively planned." The amendments permitted ranchers in the valley to sell to other property owners in the valley the right to develop within the regulations of the community. A purchaser could accumulate more than one development right.

Barancik had bought Loma Alta in 1980. He had then engaged in discussion with the County and explored various possibilities for the development of the ranch. As an agricultural project the ranch cost as much or more in taxes as it produced in revenue. According to the zoning Barancik could only build nine residences on the property. Barancik proposed a plan by which 28 residences would be built, clustered so that as much grazing of cattle could go on as presently. The Planning Commission of the County indicated that the plan might receive approval if Barancik could acquire "Transfer Development Rights" from other ranchers. But, according to his complaint, Barancik wanted to pay no more than $8,000 a right while $30,000 was what at least one rancher sought to get. The result was that Barancik acquired no Transfer Development Rights.

On September 12, 1983 Barancik filed a formal application for rezoning of the Loma Alta Ranch to permit him to build 28 residential units. On December 3, 1984 the Planning Commission denied his request. On appeal to the Marin County Board of Supervisors, the Board on February 5, 1985 affirmed the denial. The county supervisors found that approval would "encourage premature subdivision of agricultural lands

by giving the expectation that agricultural land can be converted to residential use at a higher density than existing zoning." They also found that increasing the density by 300 percent "would significantly increase the potential conflicts between residential and agricultural uses on the site and at adjacent properties." They further found that approval "would create uncertainty in the agricultural community as to the intent of the County" and that this uncertainty would lead farmers "to refrain from making investment necessary to improve their agricultural operations." This lawsuit followed.

## ISSUES

By his amended complaint Barancik alleged that the denial of his rezoning application "constituted an unreasonable application" of the Countywide Plan and was "therefore without substantial relationship to the public, [sic] health, safety and welfare." This allegation is the only allegation in the complaint which could be construed to raise the issue of denial of due process under the Fourteenth Amendment. It was so construed by the district court. We accept this construction for purposes of this appeal.

The district court dismissed with prejudice a count in the unamended complaint which alleged that the regulations on their face are invalid. The complaint also alleged that the zoning as applied violated Barancik's right "to equal protection under the Fourteenth Amendment to the United States Constitution."

Finally, the complaint alleged that the zoning had deprived Barancik "of all beneficial use of his property in violation of the Fifth and Fourteenth Amendments." This last issue, which loomed large in the district court, was formally abandoned on appeal at the oral argument of the case. Consequently there remain only the due process and equal protection claims.

## ANALYSIS

### 1. Ripeness for Review

■ Barancik's petition is ripe for review. *Hoehne v. County of San Benito,* 870 F.2d 529 (9th Cir.1989). The record does not indicate that a variance procedure was available. "Indeed, the County has at no time asserted that application for a variance was a viable option." *Herrington v. County of Sonoma,* 857 F.2d 567, 570 (9th Cir.1988). There is no requirement that he make a futile reapplication.

### 2. The Facial Challenge

■ As the district court held in dismissing one count, Barancik's facial challenge is barred by the statute of limitations. The cause of action accrued either in 1972 or 1975 or, at the latest, 1979. Barancik filed his suit on June 14, 1985. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed. 2d 254 (1985) was decided on April 17, 1985. Accordingly, the governing statute of limitations was a one-year statute. *Gibson v. United States,* 781 F.2d 1334 (9th Cir.1986). Barancik brought his suit at least five years too late.

### 3. Equal Protection

The zoning of the adjoining properties was done in 1972. Objection to this zoning is again barred by the applicable statute of limitations.

Barancik—pretty much by innuendo—suggests that George Lucas's Bulltail Ranch is being treated differently because of Lucas' fame as a filmmaker. The amendment of the Marin County Code that permits "limited commercial use" in agricultural zones was adopted in 1979. Again, the statute of limitations is a bar.

### 4. Substantive Due Process

■ The district court found that the County had a reasonable purpose in zoning as it did and applying the zoning as it did to Loma Alta Ranch. We agree. To prove his case Barancik had to show that the County's zoning was arbitrary and irrational. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1975). He attempted to do so by concentrating on the zoning in relation to his own property and arguing that just

as many cows would graze there if there were 28 residences as would if there were nine. The argument, of course, is myopic. Zoning is of an area. The planner wants to preserve an area for a given use. Yielding to Barancik's arguments would set a precedent which, followed, would lead to the cumulative destruction of agriculture in Nicasio Valley. The cowboy and the farmer may be friends as the song has it, but not the rancher and the urban commuter, at least not if commuters, with the roads they need and the cars they drive and the tastes they have, begin to predominate in the countryside. Marin's zoning no doubt preserves a bucolic atmosphere for the benefit of a portion of the population at the expense of those who would flow into the county if there was no zoning. The Constitution lets that decision be made by the legislature. The Countywide Plan is a legislative declaration that there will be a corridor in Marin agricultural in its use. The choice was not irrational, the application to Barancik not arbitrary.

Barancik suggests that at least by analogy the dictum of the Supreme Court in *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141 at 3148, 97 L.Ed.2d 677 (1987) has application. The Court pointed out that while California could prohibit shouting "FIRE" in a crowded theater, it could not make such a prohibition and then give dispensations to shout to those willing to contribute $100 to the state treasury. Why, it is asked, is the County's scheme for Transfer Development Rights different? You can get your development if you are willing to pay a price for it. The answer is that you are not being given a dispensation from zoning by payment of a fee to the state. You are being permitted to accumulate development rights in the same area by a price paid to the owner of the rights.

In other words, a finite amount of development is permitted in the area. The County is rightly indifferent as to who does the development. It lets the market decide the price. A purchase of Transfer Development Rights does not increase the total amount of development possible in the rural corridor. The regulation permitting the accumulation of transfer rights is rationally related to the overall purpose of preserving agriculture in the area.

AFFIRMED.

SCHROEDER, Circuit Judge, concurring specially:

I concur in the result. The district court properly dismissed appellant's action. On the basis of the undisputed facts in the record, appellant could not prevail on any of his challenges to the county's original zoning, or to the county's rejection of plaintiff's request to treble the density permitted under that zoning.