Ann DANIEL; Leonard Hill,
Plaintiffs–Appellants,

v.

COUNTY OF SANTA BARBARA; All Persons Unknown, Claiming any Right, Title Estate Lien or Interest in or to the w/in Described Property; Does, 1–1000 inclusive, Defendants–Appellees.

No. 99–56887.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2001.

Filed March 12, 2002.

Withdrawn April 18, 2002.

---

Steven A. Amerikaner, Hatch & Parent, Santa Barbara, CA, for the plaintiffs-appellants.

Stephen Shane Stark, Alan L. Seltzer and William M. Dillon, County of Santa Barbara, Santa Barbara, CA, for the defendants-appellees.

Peter H. Kaufman, Attorney General's Office, San Diego, CA, for Amicus California Coastal Commission.

Before TROTT, McKEOWN, and W. FLETCHER, Circuit Judges.

### ORDER

The Opinion filed March 12, 2002, and appearing in the advance sheets at 282 F.3d 1196, is hereby withdrawn and replaced by the attached opinion.

With the filing of this new opinion, the panel has voted unanimously to DENY the petition for rehearing filed by Appellees County of Santa Barbara, et al. on March 26, 2002.

The panel has also voted unanimously to DENY the petition for rehearing and the petition for rehearing en banc filed by Appellants Daniel and Hill on March 26, 2002. The full court has been advised of the petition for en banc rehearing, and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R.App. P. 35(b).

### OPINION

WILLIAM A. FLETCHER, Circuit Judge.

Appellants Ann Daniel and Leonard Hill ("the Daniels") purchased beachfront property in Santa Barbara County ("the County") in 1997. In 1974, Carl Johnson, one of the Daniels' predecessors in interest, made a 25–year "firm, continuing" Offer to Dedicate to the County a five-foot-wide pedestrian and bicycle easement across the property. In 1977, Johnson renewed the offer. These two Offers to Dedicate were exacted by the County in return for granting permits to Johnson to divide and then to build on the property. In 1987, W. Bruce and Darleine Bucklew ("the Bucklews"), also predecessors in interest, made a 25–year "irrevocable" Offer to Dedicate the same five-foot easement. All three Offers to Dedicate were matters of public record.

In 1998, shortly after the Daniels' purchase of the property (and within the 25–year periods of all three Offers to Dedicate), the County accepted the Offer to Dedicate made by the Bucklews. The Daniels challenged the County's action in federal district court under 42 U.S.C. § 1983, alleging a violation of the Takings Clause of the federal Constitution. They also alleged violations of state law. The County successfully moved to dismiss the complaint, and the Daniels appeal the dismissal of their § 1983 claim. We affirm the district court.

I

In 1997, the Daniels purchased beachfront property in Santa Barbara County that had once been part of a larger parcel owned by Johnson. In 1973 and 1974,

Johnson had divided the original parcel into four separate parcels; the division included a thirty-foot-wide driveway and a five-foot-wide passageway to the beach for the common use of the owners of the four parcels. A regional commission of the California Coastal Zone Conservation Commission ("Coastal Commission" or "Commission")[1] approved the division, conditioned on Johnson's

> offer[ing] for dedication to the County of Santa Barbara or its successor in jurisdiction, for recreational pedestrian and bicycle access an easement 5′ in width from Padaro Lane to the mean high tide line .... Said offer shall be a *firm continuing offer of dedication* which is not rejected or vitiated by failure to accept or purported rejection for a period of 25 years, unless the County has in the meantime provided beach access within a distance of 300 yards upcoast or downcoast of this parcel. The offer of dedication shall be conditioned on assumption by the County of Santa Barbara or its successor, of the burden of maintenance of the easement and the beach area to which access is provided, together with the burden of public liability on the easement.

(Emphasis added.) Johnson appealed the imposition of this Firm Continuing Offer to Dedicate ("FCOTD") to the Commission, which affirmed the regional commission's decision. Johnson brought no judicial challenge to the administrative decision.

In 1977, Johnson applied to the Coastal Commission for a permit to build a house on the parcel that is now owned by the Daniels. The permit was approved by the Commission, conditioned on a renewal of the 25–year FCOTD described above.

Johnson built the house under the permit in 1978, and he did not challenge the imposition of the renewed FCOTD either administratively or judicially.

The Bucklews owned the parcel on which Johnson built the house as successors in interest. In August 1987, in response to a demand by the Commission, the Bucklews signed a 25–year Irrevocable Offer to Dedicate ("IOTD") the same five-foot easement described in the two FCOTDs granted by Johnson. The Bucklews did not challenge the Commission's demand for the IOTD either administratively or judicially.

The Daniels purchased the Johnson/Bucklew property in 1997. On September 15, 1998, the County notified them that on October 6, 1998, it would consider whether to accept the Bucklews' 1987 IOTD. On October 5, 1998, the Daniels unsuccessfully attempted to rescind it. On October 20, 1998, the County Board of Supervisors adopted a resolution accepting the 1987 IOTD.

In November 1998, the Daniels filed suit against the County for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging a physical taking in violation of the Takings Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment. They also alleged several violations of state law. On motion by the County, the district court dismissed the takings claim. It held that the Daniels lacked standing because all the Offers to Dedicate were attached to the property at the time they purchased it. Alternatively, the district court held that any takings claims accrued in 1974 and 1977, and in any event no later than 1987, and were therefore time-barred. Finally, the dis-

---

**1.** The California Coastal Zone Conservation Commission was created in 1972. Cal. Pub. Res. § 27200 (repealed 1977). In 1977, it became the California Coastal Commission.

Cal. Pub. Res. §§ 30105, 30300. For convenience, we refer to the two commissions interchangeably as the "Coastal Commission."

trict court held that even if the Daniels had standing and their takings claim was not time-barred, the claim would not be ripe because the Daniels could not allege that the state had refused to compensate them or their predecessors for the alleged taking. The district court then dismissed the supplemental state claims without prejudice pursuant to 28 U.S.C. § 1367(c). The Daniels appeal the dismissal of their takings claim.

## II

We review questions of law *de novo. See McBride v. PLM Int'l, Inc.,* 179 F.3d 737, 741 (9th Cir.1999). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 663 (9th Cir. 2000). Dismissals for failure to state a claim or for lack of standing are reviewed *de novo. See Williamson,* 208 F.3d at 1149; *Stewart v. Thorpe Holding Co. Profit Sharing Plan,* 207 F.3d 1143, 1148 (9th Cir.2000). Dismissal on statute of limitations grounds is reviewed *de novo. See Ellis v. City of San Diego,* 176 F.3d 1183, 1188 (9th Cir.1999). Ripeness is a question of law reviewed *de novo. See Natural Res. Def. Council v. Houston,* 146 F.3d 1118, 1131 (9th Cir.1998).

Under the Takings Clause of the Fifth Amendment, the government may not take "property … for public use, without just compensation." U.S. Const. amend. V. The Takings Clause is applied to the states through the Fourteenth Amendment. The clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

We affirm the district court's dismissal of the Daniels' takings claim on two independently sufficient grounds. First, the Daniels' claim is an impermissible attempt to revive the time-barred claims of their predecessors in interest. Second, the injunctive and declaratory remedy sought by the Daniels is, in any event, not available under the takings claim they seek to bring.

## III

We first examine the takings claims of the Daniels' predecessors in interest, Johnson and the Bucklews. Johnson's and the Bucklews' claims arising out the exaction of the offers to dedicate can plausibly be characterized as either regulatory or physical takings. Under either characterization, Johnson and the Bucklews are time-barred from pursuing those claims. The Daniels, as their successors in interest, are similarly time-barred. They may not bring a claim based on the exaction of the offers to dedicate, or on the later acceptance of one of those offers.

## A

We think it most plausible to characterize Johnson's and the Bucklews' claims as alleged regulatory rather than physical takings. The Coastal Commission regulated the development of private property along the California coast, including the Johnson/Bucklew property. As part of that regulation, it granted permission to subdivide the parcel and to build on one of the four lots in return for Johnson's agreement to grant the two FCOTDs. The Commission did not grant anything in exchange for the Bucklews' grant of the

IOTD, but the Bucklews' grant was part of the ongoing regulatory process that had begun with Johnson's grant of the first FCOTD in 1974.

 [2] Under *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), a challenge to an alleged regulatory taking is not ripe unless two conditions are satisfied. First, the action alleged to constitute the taking must be "a final decision regarding how [the owner] will be allowed to develop its property." *Id.* at 190, 105 S.Ct. 3108. An action is not final "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186, 105 S.Ct. 3108. As the Court explained last Term in *Palazzolo v. Rhode Island,* 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), "[O]nce it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened."

 Second, a plaintiff must have sought compensation for the alleged taking through available state procedures. A state is not forbidden to take private property for public use. It is only forbidden to do so if it does not pay just compensation for that property. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County,* 473 U.S. at 195, 105 S.Ct. 3108. *See, e.g., Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 686 (9th Cir. 1993); *Schnuck v. City of Santa Monica,* 935 F.2d 171, 173 (9th Cir.1991).

 The first *Williamson County* requirement was satisfied in this case. Johnson objected to the exaction of the 1974 FCOTD and then appealed unsuccessfully to the Coastal Commission. Once the Commission affirmed that FCOTD, the conditions on which Johnson would be permitted to subdivide his parcel were "known to a reasonable degree of certainty," *Palazzolo,* 533 U.S. at 620, 121 S.Ct. 2448, and the Commission's action was final. Given the affirmance by the Commission of the exaction of the 1974 FCOTD, we do not believe that appeals from the 1977 FCOTD and the 1987 IOTD were necessary in order to obtain final decisions, for even without administrative appeals, it was "known to a reasonable degree of certainty" what the ultimate answer would be.

 However, the second *Williamson County* requirement does not appear to have been satisfied. Neither Johnson nor the Bucklews ever attempted to use state procedures to obtain just compensation from the Commission, which exacted the offers to dedicate, or from the County of Santa Barbara, to which the offers were made. Assuming that adequate state procedures were available to seek such compensation, the failure of Johnson and the Bucklews to seek just compensation meant that they never created ripe federal takings claims. The failure of Johnson and the Bucklews to use such state procedures cannot now be cured because the applicable state limitation periods have long since expired.

 An alternative analysis is possible for Johnson. There may have been no adequate state procedures available to him for the 1974 and 1977 FCOTDs because, as a general rule, California did not allow inverse condemnation suits for regulatory takings until 1987, when the Supreme Court decided *First English Evangelical*

*Lutheran Church v. Los Angeles County,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). *See San Remo Hotel v. City & County of San Francisco,* 145 F.3d 1095, 1102 (9th Cir.1998); *Christensen v. Yolo County Bd. of Supervisors,* 995 F.2d 161, 164 (9th Cir.1993). If the exactions of the 1974 and 1977 FCOTDs were regulatory takings for which California had no available state procedures, Johnson's takings claims for those exactions were ripe as soon as the Commission's decisions were final. *See Williamson County,* 473 U.S. at 194–97, 105 S.Ct. 3108. If that is so, however, the statute of limitations for claims based on those exactions began to run in the 1970s and has long since expired.

### B

 It is also plausible to characterize Johnson's and the Bucklews' claims as alleged physical takings. Although the exactions of the FCOTDs and the IOTD resulted from the Coastal Commission's regulatory process, the ultimate result of the process was the exaction of options for a public access easement across private property. The Supreme Court has made clear that such an easement is a "permanent physical occupation." *See Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 832, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) ("We think a 'permanent physical occupation' has occurred, for purposes of [the takings] rule, where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises.").

The ripeness analysis of *Williamson County* applies to physical takings, but in a modified form. The first *Williamson County* requirement is automatically satisfied at the time of the physical taking. *See Hall v. City of Santa Barbara,* 833 F.2d 1270, 1281 n. 28 (9th Cir.1986) ("Where there has been a physical invasion, the taking occurs at once, and nothing the city can do or say after that point will change that fact."), *overruled on other grounds by Yee v. City of Escondido,* 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). If the exactions of the FCOTDs and IOTD were physical takings, the finality requirement was automatically satisfied at the time of the exactions. The second *Williamson County* requirement remains the same. In a physical takings case, as in a regulatory takings case, the property owner must have sought compensation for the alleged taking through available state procedures. *See Williamson County,* 473 U.S. at 194–95, 105 S.Ct. 3108; *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1402 (9th Cir.1989) ("Even in physical taking cases, compensation must first be sought from the state if adequate procedures are available."), *overruled on other grounds by Armendariz v. Penman,* 75 F.3d 1311 (9th Cir.1996) (en banc). Neither Johnson nor the Bucklews ever sought compensation pursuant to state procedures for any alleged taking arising out of the FCOTDs and IOTD. It is now too late for them to do so, for the applicable limitations periods have long since expired.

### C

 The Daniels purchased their property with notice of the FCOTDs and IOTD. They cannot, by virtue of their purchase, obtain greater rights than those held by their predecessors in interest. They therefore cannot bring the time-barred state administrative and judicial challenges, or the § 1983 takings challenge, that Johnson and the Bucklews failed to bring. Indeed, the Daniels purport not to revive the takings claims of their predecessors in interest. Rather,

they purport to bring a takings claim on their own behalf, which they contend arises out of the County's 1998 acceptance of the 1987 IOTD. They contend that the County's acceptance of the IOTD—in effect, the County's exercise of its option—is an action that, if uncompensated, constitutes a taking.

 Under established federal law, a taking occurs when an option to take an easement is granted, not when the option is exercised. *See, e.g., Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1028–29, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) ("Where 'permanent physical occupation' of land is concerned, we have refused to allow the government to decree it anew (without compensation), no matter how weighty the asserted 'public interests' involved—though we assuredly *would* permit the government to assert a permanent easement that was a pre-existing limitation upon the landowner's title." (emphasis in original) (internal citation omitted)); *United States v. 30.54 Acres of Land,* 90 F.3d 790, 792 (3d Cir.1996) ("Because the navigational servitude was a preexisting limitation on the landowners' title to riparian land, we hold the Corps' exercise of the servitude . . . was not a taking[.]"). Under established California law, an option to purchase land is a cognizable property interest in an eminent domain proceeding. The value of the option is "the excess—if any—of the total [eminent domain] award above the 6174 optioned purchase price." *County of San Diego v. Miller,* 13 Cal.3d 684, 693, 119 Cal.Rptr. 491, 532 P.2d 139 (1975).

Under these established principles, the taking of the FCOTDs and the IPOTD— that is, the taking of options to accept the easement—took place in 1974, 1977, and 1987. The value of these options was the value of the easement, minus the "optioned purchase price" the County would have to

pay. Because the County did not have to pay anything to exercise the options, the value of what was taken from Johnson and the Bucklews was the full value of the easement. Thus, when the Daniels purchased the property from the Bucklews, the offers to dedicate the easement had already been taken from their predecessors in interest, and the County's acceptance of one of those offers took nothing from the Daniels that had not already been taken.

 The existence of the FCOTDs and IOTD was a matter of public record when the Daniels purchased the property, and we may presume that their purchase price reflected that fact. As we stated in *Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 476 (9th Cir.1994), *overruled on other grounds by WMX Tech., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc), "A landowner who purchased land after an alleged taking cannot avail himself of the Just Compensation Clause because he has suffered no injury. The price paid for the property presumably reflected the market value of the property minus the interests taken." The Court's decision last Term in *Palazzolo* indicates that in some circumstances a purchaser may have a valid takings claim even if his or her purchase price was discounted to reflect existing land-use regulations, but we believe that the reasoning of *Palazzolo* does not apply to this case.

In *Palazzolo,* the landowner took ownership of property that was already subject to existing state regulations restricting the use of wetlands. The landowner later sought approval for a specific use of the property, which the state refused, pursuant to the regulations. The state court held that there was no taking because the landowner's investment-backed expectations included the reduction in the fair market value that resulted from the regulations that were in existence when the

property was acquired. The Supreme Court condemned the state court's "single, sweeping rule" under which a "purchaser or a successive title holder like petitioner is deemed to have notice of an earlier-enacted restriction and is barred from claiming that it effects a taking." *Palazzolo*, 533 U.S. at 626, 121 S.Ct. 2448. "A blanket rule that purchasers with notice have no compensation right when a claim becomes ripe is too blunt an instrument to accord with the duty to compensate for what is taken." *Id.* at 628, 121 S.Ct. 2448.

*Palazzolo* rejected the state court's "blanket rule" that would have found no taking whenever a purchaser was aware of existing land-use regulations that reduced the market value of property. But *Palazzolo* did not adopt the converse of that rule. That is, it did not adopt a rule that would find a taking whenever there are pre-existing restrictions on land use that reduce market value. If that were the rule, no land-use restriction would ever be safe from a takings challenge. Every new purchaser could bring a takings challenge even if there had been a taking for which the prior owner had already been compensated; if the prior owner had already litigated and lost a takings challenge to that restriction; or if the prior owner had allowed application limitations periods to lapse without creating a ripe takings claim or challenging an already-ripe claim.

The facts of *Palazzolo* were substantially different from those in this case, and the Supreme Court's rejection of the state court's "blanket rule" in that case does not require that we find that the Daniels have a viable takings claim. In *Palazzolo*, the taking, if there was one, was regulatory rather than physical taking. The landowner took ownership of the property subject to pre-existing wetlands regulations that had the potential, in the context of a specific proposed project, later to effect a regulatory taking. No taking occurred un-

til the specific proposal was rejected, after ownership of the property changed hands. In this case, the Daniels allege a physical taking. They purchased their property subject to the County's pre-existing options to accept dedication of an easement. When the County exercised one of the options to accept the easement, it effected a physical taking, but only to the extent that it took something of value. Because the full value of the easement had already been taken from the Daniels' predecessors, it took nothing of value from the Daniels.

### IV

The Daniels do not seek damages, in the form of just compensation, for the physical taking they allege. If the Daniels sought damages, their claim would not be ripe, for they have not used available state procedures to seek just compensation. *See Williamson County*, 473 U.S. at 194–95, 105 S.Ct. 3108; *Sinaloa*, 882 F.2d at 1402. Instead of damages, the Daniels seek declaratory and injunctive relief against County's acceptance of the 1987 IOTD. The argue that they need not seek damages because the County cannot constitutionally accept the IOTD, even if it is willing to pay whatever just compensation might be owed. Because they do not seek damages, they argue that they need not seek just compensation through available state procedures.

■■■ Damages, in the form of just compensation, are the normal remedy for a takings claim. In almost all takings cases, the governmental body has the constitutional power to regulate or seize the private property in question; the only issue is whether (or how much) it needs to pay for that property. Indeed, it is the very essence of an ordinary takings claim that the property owner cannot prevent the governmental body from regulating or seizing the property, provided that just compensation is paid.

The Supreme Court has recognized an exception to the usual requirement that a property owner must seek compensation through state procedures. In *Yee v. City of Escondido*, 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), the Court stated that where a municipal ordinance is facially challenged on the ground that the ordinance "does not ' "substantially advance" ' a ' "legitimate state interest" ' no matter how it is applied," there is no requirement that the property owner first seek just compensation. 503 U.S. at 534, 112 S.Ct. 1522. In such a case, the property owner's argument is that the municipality has no authority to adopt the ordinance, and that payment of compensation by the municipality cannot confer an authority that is otherwise lacking. *See Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 406 (9th Cir.1996) (discussing *Yee* in dictum); *Carson Harbor*, 37 F.3d at 476–77 (same). *See also Tolksdorf v. Griffith*, 464 Mich. 1, 626 N.W.2d 163 (2001) (governmental taking of property for a private road invalid because not for a "public purpose").

■ The Daniels' failure to seek compensation though available state procedures cannot be excused under the rationale of *Yee*. There is no doubt that a governmental body may compel a property owner to convey a public access easement. If there is a constitutional infirmity in the County's acceptance of the offer to dedicate the public access easement across the Daniels' property, it does not lie in the inability of the Coastal Commission to compel the offer, or the inability of the County to accept it. The constitutional infirmity lies, rather, in the Coastal Commission's and the County's failure to pay. As the Court put it in *Nollan v. Cal. Coastal Commission*, 483 U.S. 825, 841–42, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), "California is free to … [use] its power of eminent domain for the 'public pur-

pose,' … but if it wants an easement across the Nollans' property, it must pay for it."

Because the Coastal Commission and the County have the constitutional authority to take the easement, the only possible remedy for the Daniels' alleged physical taking is damages. However, the Daniels have failed to seek just compensation through available state procedures, and have not sought damages in this suit. They have instead sought injunctive and declaratory relief that would prevent the County from accepting the easement, even upon payment of just compensation. Because the Commission and the County have the authority to compel the conveyance of a public access easement upon payment of just compensation, the Daniels are not entitled to such relief.

AFFIRMED.