**VENTURA MOBILEHOME COMMUNITIES OWNERS ASSOCIATION, an unincorporated association, Plaintiff– Appellant,**

v.

**CITY OF SAN BUENAVENTURA, Defendant–Appellee.**

No. 02–56566.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 1, 2004.

Filed June 10, 2004.

Robert S. Coldren, C. William Dahlin, and Mark D. Alpert, Santa Ana, CA, for the plaintiff-appellant.

Robert G. Boehm, Ventura, CA; and Donald R. Lincoln, Henry E. Heater, and Linda B. Reich, San Diego, CA, for the defendant-appellee.

Before: SILVERMAN, GOULD, and BEA, Circuit Judges.

BEA, Circuit Judge:

Plaintiff–Appellant, Ventura Mobile Home Communities Owners Association, contends the district court (1) miscalculated the date on which its claims brought under 42 U.S.C. § 1983 accrued and improperly applied the limitations period, (2) erroneously prevented it from asserting an "as applied" takings challenge, (3) erroneously found the Association had not properly exhausted the remedies provided by state law so that its federal claims were not ripe, and (4) erred in not considering its argument that the city ordinance is preempted by state law. We affirm the district court's dismissal of Appellant's federal claims, but remand for entry of a judgment of dismissal without prejudice on Appellant's state law claims.

## FACTS

The City of Buenaventura ("the City") first adopted its Mobile Home Park Rent Stabilization Ordinance ("the Ordinance") in 1981. Noting "the lack of alternative homesites for mobile home residents" and a "virtual monopoly ... in the rental of mobile home park spaces," the City imposed a rent control structure for the claimed purpose of protecting mobile home residents from unreasonable rent increases.

The ordinance provided that space rents in mobile home parks could be increased only with the approval of the Mobile Home Rent Review Board and could not be increased more than once per year. Approved increases were limited to seven percent of the base rent the first year an increase was requested or, for later increases, seven percent of the then-existing space rent not attributable to housing ser-

vices or capital improvements. Because no provision was made for rent increases in the event a mobile home was sold or transferred, the ordinance imposed de facto "vacancy control" on mobile home parks.[1]

In 1996, the city enacted new vacancy control in Ordinance 96–3. The 1996 amendment prohibited park owners from including provisions in leases by which tenants waived rent controls. The amendment also stated:

> Absent an agreement to the contrary, the maximum rental fee that may initially be charged to the purchaser of an existing mobile home, in an existing mobile home park, is a rental fee that does not exceed the rental fee in force and effect on the date that title of the mobile home transfers from the seller to the purchaser.

The 1996 amendment also changed the formula for setting approved rent increases. The limit imposed on rent increases became the lesser of seven percent of the then-existing rent or seventy five percent of the percentage increase in the Consumer Price Index for the Los Angeles–Long Beach area for the preceding year.

The City's mobile home rent control ordinance was codified as Municipal Code Section 6.600, et seq., and has not been materially amended since 1996. The codified Ordinance reiterates the City's intention

> to continue to protect the mobile home owners' investment in their mobile homes, and to protect the owners and occupiers of mobile homes from unreasonable rent increases, while at the

---

1. In 1989, the Ordinance was amended to provide for limited vacancy "decontrol," allowing park owners to raise rents by the greater of 15 percent or $35.00 following a mobile home sale. A 1990 amendment limited the availability of vacancy decontrol to

park owners who entered into a Settlement and Release of litigation against the city. This provision was repealed in 1995, when the city passed an ordinance which effectively reinstated the previous regime of vacancy control by omission.

same time recognizing the need of park owners to receive a fair return on their property and rental income sufficient to cover increases in the costs of repairs, maintenance, insurance, employee services, additional amenities, and other costs of operation.

Ordinance § 6.600.010.

Appellant filed its complaint on November 9, 2001 asserting that by enacting rent and vacancy controls, the Ordinance prevented the owners of mobile home parks from charging rents at market rates and conferred a premium on renters by artificially inflating the value of mobile homes at the expense of park owners. Appellant alleged the Ordinance constituted a regulatory "taking," did not substantially advance a legitimate governmental purpose in violation of the Fifth Amendment, deprived the Appellant of due process, violated civil rights and equal protection of the law under 42 U.S.C. § 1983, and was preempted by state law.

On May 23, 2002, the district court entered a minute order dismissing Appellant's complaint without prejudice. The district court found that Appellant's claim constituted a facial challenge to the Ordinance, but was not filed within the one-year statute of limitations for § 1983 actions brought in California; if construed as an as-applied challenge to the Ordinance, Appellant's takings claim was not ripe[2]; the Ordinance was not preempted by state law and the Ordinance did not violate due process; and Appellant's claims that the Ordinance conflicted with state Public Utilities Commission ("PUC") rulings and infringed on equal protection were facial challenges also barred by the statute of limitations. The district court granted the City's motion to dismiss with leave to amend.

Appellant filed an amended complaint on June 19, 2002. With the exception of allegations that plaintiff was subject to delayed discovery of the damage done it by the subject statute, the amended complaint asserted claims substantially identical to the original complaint.

*Ripeness allegations*

Appellant freshly alleged, however, that any state law compensatory remedies would be futile considering

> the City has failed and refused to take any action to amend, address or otherwise correct the deficiencies and constitutional infirmities of the Ordinance, despite the specific requests of Plaintiff and the clear direction and authorization for such change in the Ordinance. Thus, Plaintiff has fully exhausted its available administrative remedy and has no additional legal recourse but this court.

Appellant described how its members "discussed the City's rent control ordinance with designated representatives and attorneys representing Defendant City" and "engaged in mediation with the aid and participation of an independent mediator" over the rent control issue from May to July 2001. Notwithstanding these negotiations, the Buenaventura City Council decided against changes in the Ordinance at a July 30, 2001 meeting. In a letter from the city council dated August 7, 2001, and attached as an exhibit to the amended complaint, Appellant was informed "the City Council does not intend to revise the Ordinance's vacancy control provisions." According to Appellant, "there are no further mechanisms for seeking relief from Defendant City. Plaintiff has exhausted all available means of seeking relief."

---

**2.** "Ripe," as used herein, means that available remedies for rent increases or other relief under local or state law had not been adequately pursued or exhausted.

*Delayed Discovery Allegations; Statute of Limitations*

Appellant alleged that the Ordinance failed to provide for a "fair and reasonable return for a capital investment in a mobile-home park project." Appellant also alleged that the City "knowingly, intentionally and specifically refused applications of various property owners to build ... additional mobile home park housing," thus exacerbating the housing shortage in Buenaventura.

Appellant further alleged that premiums resulting from the City's vacancy rent control regime became reasonably measurable or discoverable only in late 2000 or early 2001. According to the amended complaint, premiums were generated because of an "increase in demand for land close to the ocean, the increase in housing costs and rents generally and inflation ... but also by the specific application of the Ordinance." As a result, "empirical data and evidence demonstrate that, in fact, resale prices for mobilehomes in mobilehome parks in Defendant City are greatly inflated, have no relationship to their actual intrinsic value, and that the Ordinance does not further the goal of preserving or protecting affordable housing." Appellant reiterated its request that the Ordinance be declared a "regulatory taking" preempted by determinations of the California Public Utilities Commission.

On August 13, 2002, the district court granted the City's motion to dismiss under Fed.R.Civ.P. 12(b)(6). The district court again found that notwithstanding Appellant's augmented allegations, its takings claims were facial challenges which accrued, at the latest, when the Ordinance was enacted in 1996. As a result, Appellant's facial takings claims were time-barred by the one-year statute of limitations. The district court also perfunctorily rejected Appellant's claim that takings claims do not accrue until the existence of a premium can be reasonably measurable or discoverable.

The district court noted that Appellant essentially amended its complaint only with regard to the takings claims. Accordingly, the district court dismissed the remaining claims for the same reasons stated in its May 23, 2002 order. Appellant's complaint was dismissed with prejudice because the district court determined that the Association "had already been given one opportunity to amend its complaint and neither the original complaint nor the [First Amended Complaint] have stated a claim ... [and] further amendment would be futile."

On appeal, the Appellant contends that the district court miscalculated the accrual date of its claims and as a result improperly applied the statute of limitations; erroneously failed to construe its cause of action as both a facial and an as-applied challenge to the Ordinance; and erred in finding its takings claim was not ripe and that the Ordinance was not preempted by state law.

## STANDARD OF REVIEW

■ Dismissal for failure to state a claim is reviewed *de novo,* as are dismissals on statute of limitations or ripeness grounds. *Daniel v. County of Santa Barbara,* 288 F.3d 375, 380 (9th Cir.2002). On a motion to dismiss, allegations of material fact are taken as true and are construed in the light most favorable to the nonmoving party. *Id.*

## ANALYSIS

### 1. Fifth Amendment Takings

■ In its action, Appellant has asserted takings claims under two different theories: First, that the Ordinance creates a premium for mobile home owners on sale of their units which premium would, absent the rent control scheme, go to the mobile home park owner, without providing just compensation for mobile home

park owners; and second, that the Ordinance is an unconstitutional exercise of governmental power because it does not substantially advance a legitimate governmental objective, in violation of the Fifth Amendment of the United States Constitution. The district court construed Appellant's takings claim to be a facial challenge to the Ordinance. In contrast, Appellant characterizes the allegations in its amended complaint as a challenge to the Ordinance as it affects Appellant's members.[3]

> A facial challenge involves "a claim that the mere enactment of a statute constitutes a taking," while an as-applied challenge involves "a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation."

*Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 686 (9th Cir.1993).

The district court construed Appellant's claim as facial in nature because "the premium arises solely from the existence of the statute itself," *see Levald,* 998 F.2d at 689, and the failure of an ordinance substantially to advance its purpose is also usually discernible at the time the ordinance is enacted, *see Richardson v. City and County of Honolulu,* 124 F.3d 1150, 1164 (9th Cir.1997).

The district court declined to consider Appellant's action as an as-applied takings claim, concluding that allegations of improper premiums from vacancy control are inherently facial because the premium is a direct result of the ordinance's enactment. As the *Levald* court noted:

> Thus, the argument goes, insofar as the purpose of the statute is to control spiraling housing costs for future tenants, the statutory scheme does not substantially advance its purpose. The statute operates solely as a transfer of wealth from the landlord to the existing tenant. That argument, however, is relevant only to a *facial,* not an as-applied, regulatory challenge. It is not a particular *application* of the statute that gives rise to the premium; the premium arises solely from the existence of the statute itself.

*Levald,* 998 F.2d at 689 (emphasis in original).

The district court disposed of Appellant's action on statute of limitations grounds and, in so doing, did not reach the issue of ripeness.[4] In determining wheth-

---

3. Appellant's claim is not the typical "as-applied" taking, which normally involves direct governmental action as to plaintiff's property, such as a change in zoning. It is a claim that market conditions not immediately discernible upon the enactment of the rent control ordinance worked to effect a taking in conjunction with the Ordinance as it affected all of its members' property.

4. In Paragraphs 45 and 46 of the amended complaint Appellant alleges that because of the operation of complex economic factors the creation of a premium by the Ordinance was not reasonably measurable or discoverable until late 2001. Given this allegation of delayed effect, and our well-known rules requiring us to take as true plaintiff's allegations, the panel is skeptical as to whether the statute of limitations bars Appellant's premi-

um creation and deprivation claim. "A statute of limitations under § 1983 ... begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1058 (9th Cir.2002) (district court granted summary judgment against nightclub owners' claims that noise ordinance was overbroad and discriminatorily applied on, inter alia, statute of limitations grounds; Court of Appeals reversed and remanded). However, as is discussed in greater detail below, we affirm the district court's dismissal on alternative grounds supported by the record, to wit: lack of ripeness. *See Cardenas v. Anzai,* 311 F.3d 929, 938 (9th Cir.2002) (finding plaintiffs had standing, claims were sufficiently ripe and not barred by Eleventh Amendment, but affirming district court's order of dismissal for failure to state a claim).

er takings claims are properly before the court, we first determine whether the claim is ripe and then determine whether the claim is barred by a statute of limitations. *Hacienda Valley Mobile Estates v. City of Morgan Hill,* 353 F.3d 651, 655 (9th Cir.2003) (affirming district court's dismissal of mobile home park owner's action challenging vacancy control ordinance for lack of subject matter jurisdiction).

■ The ripeness inquiry in a regulatory takings case usually turns on two considerations: "The plaintiff must have obtained a final decision from the governmental authority charged with implementing the regulations and must have pursued compensation through state remedies unless doing so would be futile." *Id.* (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194–95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1982)). However, the "final decision" requirement does not apply to facial takings claims because they, by definition, derive from the ordinance's enactment, not any implementing action on the part of governmental authorities. *Id.; Levald,* 998 F.2d at 685.

Appellant characterizes its takings claim as a challenge to the Ordinance as-applied, arguing that a premium does not always arise from a statutory enactment, but can be caused by later events including the Ordinance's enforcement.[5] Such a claim is viable under the post-*Levald* line of cases in this Circuit. *See Hacienda Valley,* 353 F.3d at 656 ("Hacienda is careful to argue that the Ordinance alone is not the basis of its challenge. Instead, it alleges that the Ordinance, complex economic factors, and the Commission's decision not to grant the bulk of Hacienda's rent increase all combined to create a premium in the Park. We conclude that these allegations are sufficient to support an as-applied challenge.").

■ Appellant alleged that after the Ordinance was enacted, the City "defined certain terms in the Ordinance," adopted guidelines setting acceptable levels for a capital expenditure rent increase, and prevented the construction of new mobile home parks by withholding permits. Negotiations and mediation with the City failed, according to Appellant, because "Defendant City has failed and refused to take any action to amend, address or otherwise correct the deficiencies and constitutional infirmities of the Ordinance."

■ Whether it is construed as a facial or as-applied takings claim, the Appellant still must satisfy the second ripeness requirement by showing it exhausted available state remedies for compensation. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Daniel,* 288 F.3d at 381 (quoting *Williamson,* 473 U.S. at 195, 105 S.Ct. 3108). Plaintiffs have not adequately alleged that they took advantage of such procedures and have been denied compensation.

With regard to their premium creation and transfer claim, Appellant has similarly not adequately alleged that it exhausted available state remedies so as to satisfy the second ripeness requirement of *Williamson County.* Although the allegations in the amended complaint indicate that

---

5. In an apparent effort to support this takings theory, Appellant has requested the Court take judicial notice of a district court order and state supreme court ruling in other takings litigation, as well as a decision in an administrative rent control proceeding. However, Appellant does not explain what relevance these documents have to this case and, in any event, they do not alter our determination of the case. Accordingly, we deny Appellant's request.

Appellant engaged in extended negotiations and mediation with the City of Buenaventura, Appellant does not allege that it sought, and was denied, compensation for losses resulting from rent or vacancy control. Instead, the letter from the Buenaventura City Council attached as an exhibit to Plaintiff's second amended complaint reads that Appellant only sought the revision of the Ordinance's vacancy control provision.

Appellant contends the Ordinance "provides no procedure or application to contest the creation of premiums." However, the Ordinance [6] allows park owners to apply for an annual, albeit limited, rent increase (Ordinance § 6.600.070(B)), a rent adjustment based on capital improvements (§ 6.600.070(G)), and an additional discretionary rent increase (§ 6.600.080(B)-(D)). Appellant did not allege that it availed itself of any of these avenues for relief, nor that such provisions would not have provided the relief Appellant seeks.

Nor has the Appellant sought redress in state court. This Court has previously recognized at least the facial validity of California's compensation scheme.[7] *Carson Harbor Village, Ltd. v. City of Carson,* 353 F.3d 824, 829–30 (9th Cir.2004). Notably, there is no allegation that Appellant applied for, and was denied, a rent increase or modification, nor has Appellant alleged that it sought damages in state court. *See Kavanau v. Santa Monica Rent Control Board,* 16 Cal.4th 761, 66 Cal.Rptr.2d 672, 941 P.2d 851 (1997) and

*Galland v. City of Clovis,* 24 Cal.4th 1003, 103 Cal.Rptr.2d 711, 16 P.3d 130 (2001).

Appellant seems to argue that whether it sought compensation is beside the point, stating, "Plaintiff's complaint does not seek compensation as the District Court held. Rather, Plaintiff urged the District Court to adjudicate the constitutionality of the ordinance." This contention is problematic for two reasons: First, it is belied by Appellant's claims for damages in its third, fourth, and fifth causes of action. Second, to state a cognizable takings claim under a premium transfer theory, Appellant must show not only a taking but also that it was denied just compensation, since "only takings without 'just compensation' infringe [the Fifth] Amendment...." *Carson Harbor,* 353 F.3d at 827 (citation omitted). Appellant has not alleged California's compensation procedures are futile or inadequate, so as to create an exemption from the exhaustion requirement. *See Williamson,* 473 U.S. at 197, 105 S.Ct. 3108. We therefore affirm the district court's dismissal on the ground that Appellant's facial and as-applied premium claims are not ripe for adjudication.

Appellant contends that the other basis for its takings claim—that the Ordinance does not substantially advance a legitimate state interest—qualifies under a recognized exception to the second ripeness requirement. *See San Remo Hotel v. City and County of San Francisco,* 145 F.3d 1095, 1101 (9th Cir.1998). A plaintiff is not required first to seek compensation before

---

**6.** Of which the district court properly took judicial notice on the motion to dismiss. Fed. R.Evid. 201.

**7.** *Carson Harbor* describes the current compensation regime, under which owners must first file for a writ of administrative mandamus (Cal.Civ.Proc. § 1094.5) in state court, followed by an application for inverse condemnation damages. Although the panel in

*Carson Harbor* expressed "serious concerns about the new compensation procedures ... at best, Carson Harbor has merely alleged that the new compensation procedures are 'untested or uncertain.' Under our precedents, that is not enough to qualify for an exemption from *Williamson's* second ripeness requirement." *Carson Harbor,* 353 F.3d at 830 (citation omitted).

initiating a "lack of substantial advancement" action,

> as it does not depend on the extent to which the [plaintiff] was compensated. Rather, the claim is based on the assertion that the municipality never had constitutional authority to adopt the ordinance, regardless of any compensation that might be offered.

*Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 966 (9th Cir.2003) (internal citations omitted).

Appellant cannot avail itself of this exception because it has failed to allege a cognizable "lack of substantial advancement" claim. Appellant contends that the premium creation and transfer caused by the Ordinance "does not further the goal of preserving or protecting affordable housing." This allegation misreads the stated purposes of the Ordinance. The Ordinance's purposes are described as protecting mobile home owners' investment in their homes and protecting residents from unreasonable rent increases, as well as allowing fair compensation for park owners. Ordinance § 6.600.010.

Appellant does not impugn those stated purposes of the Ordinance in its amended complaint, nor does it allege how these goals are not substantially advanced by the Ordinance. We affirm the district court's dismissal of the Appellant's facial claim predicated on a "lack of substantial advancement" theory, because the amended complaint and appended materials do not controvert the requirement that "a reasonable relationship exists between this regulatory action and the public purpose[s] it is meant to serve." *Hotel & Motel Ass'n of Oakland*, 344 F.3d at 967–68.

Accordingly, the only cognizable takings claims asserted by the Appellant fail the ripeness test.[8] The district court properly concluded it lacked subject matter jurisdiction.

### 2. Due Process and Equal Protection

■ In the amended complaint, Appellant asserted inchoate due process violations arising from the Ordinance and alleged that mobile home park owners are treated differently from other property owners in violation of the Constitution's equal protection clause. The district court construed Appellant's substantive due process and equal protection claims as strictly facial in nature, and as a result found them barred by the statute of limitations.[9] In any event, even accepting all allegations of material fact in the amended complaint as true, timely, and ripe, and construing them in Appellant's favor, Appellant has failed to state a valid claim for violation of either constitutional safeguard. That is, Appellant cannot style an unsuccessful takings claim as a substantive due process claim.

Appellant's claim that the Ordinance's restrictions on capital improvement expenditures violate Fourteenth Amendment substantive due process is precluded because "the alleged violation is addressed by the explicit textual provisions of the Fifth Amendment Takings Clause." *Madison v. Graham*, 316 F.3d 867, 870–71 (9th Cir.2002).

■ Similarly, Appellant's allegation that "its members have been singled out,

---

**8.** Appellant also argues it should be allowed to assert an as-applied claim that the Ordinance does not substantially advance a legitimate governmental purpose. As discussed above, however, Appellant has not articulated a cognizable "lack of substantial advancement" claim.

**9.** As to these Due Process and Equal Protection claims, Appellant does not claim discovery of damage was delayed, see footnote 4, *ante*.

from all property owners in Defendant City, to bear the burden of expense [sic] of preserving affordable housing" does not state a colorable equal protection claim. Appellant does not allege that the ordinance burdens a suspect class or a fundamental interest, and as a result, the Ordinance need only be rationally related to a legitimate state interest. *Hotel & Motel Ass'n of Oakland,* 344 F.3d at 970.

Aside from conclusory allegations, Appellant has not identified other similarly situated property owners or alleged how they are treated differently. *See Patel v. Penman,* 103 F.3d 868, 875 (9th Cir.1996), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997). As noted above, the Ordinance is at least rationally related to legitimate state interests. *See Richardson,* 124 F.3d at 1163.

There is no cognizable basis for Appellant's due process and equal protection claims, therefore dismissal was not improper.

3. State Law Preemption

■ Appellant contends the Ordinance is preempted by state law governing mobile home rental agreements. CAL. CIV. CODE §§ 798.17, 798.18. According to Appellant, because Ordinance § 6.600.090(I)(2) prohibits park owners from soliciting tenants to contract away rent control protections, the Ordinance impermissibly intrudes on state law. The district court noted that California law did not generally bar local vacancy rent control laws, and concluded that no conflict existed between the Ordinance and state law, which only applies to rental agreements of more than one year.

Appellant also contends that Ordinance section 6.600.070, which applies to rates for "housing services" in mobile home parks, is preempted by the exclusive authority of the state Public Utilities Commission ("PUC") to regulate utilities rates, in con-

travention of California Public Utilities Code § 739.5. *See Rainbow Disposal Co., Inc. v. Escondido Mobilehome Rent Review Bd.,* 64 Cal.App.4th 1159, 75 Cal. Rptr.2d 746 (1998). Appellees seem to agree that such rates are the exclusive province of the PUC.

In its order dismissing the original complaint, the district court categorized this agency preemption claim as either a facial challenge barred by the statute of limitations, or an unripe as-applied challenge. The district court gave no authority for applying the federal ripeness standards and statute of limitations for section 1983 claims to a preemption challenge grounded in state law.

We conclude that in the circumstances of this case, it was error for the district court to have retained the supplemental state claims after the federal claims were dismissed. Given the "important, unsettled, and policy-laden issues of California law" involved, "the appropriate forum for addressing the state law claims is clearly the state court." *See Holly D. v. California Inst. of Tech.,* 339 F.3d 1158, 1181 n. 28 (9th Cir.2003).

Accordingly, we reverse the judgment of the district court dismissing the supplemental state law claims with prejudice under Federal Rule of Civil Procedure 12(b)(6) and remand the case to that court with instructions to dismiss these claims without prejudice.

**CONCLUSION**

The district court's dismissal of Appellant's facial regulatory takings challenge was proper because the claims were unripe. Although Appellant may have adequately alleged a timely as-applied regulatory takings claim, such a claim is likewise not ripe. Appellant's due process claim is precluded because such a claim is in reality an unsuccessful takings claim; its equal protection claim fails because the Ordi-

nance is rationally related to a legitimate state interest.

Accordingly, we affirm the dismissal with prejudice of Appellant's federal claims. Dismissal of Appellant's state law claims with prejudice was improper, however, and we remand to the district court for dismissal without prejudice. We deny Appellant's requests for judicial notice. Each party shall bear its own costs on appeal.

**AFFIRMED in part. VACATED and REMANDED in part.**