[No. B165314. Second Dist., Div. Two. June 15, 2004.]

SERRA CANYON COMPANY, LTD., Plaintiff and Appellant, v. CALIFORNIA COASTAL COMMISSION et al., Defendants and Respondents.

## COUNSEL

Shoop & Leanse and Paul Shoop for Plaintiff and Appellant.

Bill Lockyer, Attorney General, J. Matthew Rodriquez, Assistant Attorney General, John A. Saurenman and Rosana Miramontes, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**BOREN, P. J.**—A landowner seeks to avoid the effect of an irrevocable offer to dedicate land for public use. The dedication was made by a prior owner of the land in 1983, in return for a development permit. We conclude that the current landowner's inverse condemnation claim arrives 20 years too late. All challenges to a condition placed on a development permit had to be asserted at the time the final permit decision was made and the condition was imposed. The challenge in this case was waived by the prior owner's failure to pursue its judicial remedies for an unjust taking of private property. The present landowner is bound by that waiver. We affirm the judgment in favor of the state.

## ALLEGATIONS

Serra Canyon Company, Ltd. (Serra) acquired unimproved oceanfront property in Malibu (the Property) as part of lawsuit settlement in 1992. The prior owner of the Property was The Adamson Companies (Adamson).

More than a decade before Serra acquired the Property, Adamson applied to the California Coastal Commission (the Commission) for a permit to expand a mobilehome park Adamson owns on Point Dume. In 1981, the Commission approved Adamson's application, on condition that Adamson record an irrevocable offer to dedicate land (OTD) on the Property, which is several miles away from Adamson's mobilehome park. The OTD is, in effect, a binding promise to give the Property to the state for public recreational use. It is undisputed that Adamson did not challenge the OTD permit condition at the time it was imposed.

Adamson executed the OTD on December 6, 1983, and it was promptly recorded. The OTD is binding on Adamson and its successors in interest for a period of 21 years. Recording an acceptance of the OTD within the 21-year period gives the state fee title to the Property.

The Commission transferred its rights in the OTD to the California Coastal Conservancy (the Conservancy). In August 2002, the Conservancy adopted a resolution to accept the OTD, and drew up plans for the construction of public improvements on the Property. The Conservancy expected to record its acceptance of the OTD in September 2002.

Instead, Serra filed this lawsuit seeking declaratory relief and an injunction, in an attempt to stop the Conservancy from recording documents that would transfer legal ownership of the Property to the state. Serra asserts that it has not received just compensation for the Property, as required by the federal Constitution. Requiring Adamson to cede ownership of the Property as a condition of granting a permit to expand its mobilehome park was involuntary and unconstitutional; therefore, Serra contends, any attempt to "accept" the OTD is void. Serra desires a judicial declaration that the OTD is void and seeks to enjoin the Conservancy from recording its acceptance of the OTD. Serra also requests the issuance of a writ of mandate to prohibit the Commission from assigning the OTD to the Conservancy.

## THE TRIAL COURT'S RULINGS

The trial court denied a temporary restraining order, finding that Serra's predecessor in interest, Adamson, failed to timely seek writ review of the Commission's demand for an OTD. Adamson accepted the benefit of the development permit, without challenging the burden of the OTD. As the successor in interest, Serra stands in the shoes of Adamson and is barred by the statute of limitations from contesting the OTD.

Respondents demurred to Serra's first amended complaint. The court sustained the demurrers to each cause of action on the grounds that they are barred by a 60-day statute of limitations for seeking relief from actions taken by the Commission. The court concluded that Adamson waived Serra's right to challenge the OTD. The complaint was dismissed with prejudice, and judgment was entered in favor of respondents.

## DISCUSSION

1. *Appeal and Review*

Appeal lies from the dismissal order and judgment after demurrers are sustained without leave to amend. (Code Civ. Proc., § 581d; *Diaz v. United California Bank* (1977) 71 Cal.App.3d 161, 166 [139 Cal.Rptr. 314].) Review of the ruling on the demurrer is de novo. We exercise our independent judgment to determine whether a cause of action has been stated as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115 [55 Cal.Rptr.2d 276].) An appellate court must assume that the properly pleaded allegations in the complaint are true. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 579 [94 Cal.Rptr.2d 3, 995 P.2d 139].)

## 2. *Statute of Limitations and Waiver*

The Commission's permit approval of Adamson's mobilehome park expansion contains the condition that Serra now finds noxious. The time to challenge the condition was back in 1981, by pursuing a petition for a writ of mandate under Code of Civil Procedure section 1094.5. Serra's 2002 lawsuit is far too late.

The controlling authority for us is this court's opinion in *Ojavan Investors, Inc. v. California Coastal Com.* (1994) 26 Cal.App.4th 516 [32 Cal.Rptr.2d 103] *(Ojavan)*. In *Ojavan*, the Commission imposed development restrictions on coastal property in 1979 and 1990, as a condition of approving a proposed condominium and housing project elsewhere in the coastal zone. The declaration of restrictions was recorded. A third party, Ojavan, purchased the restricted parcels in 1991, and proceeded to challenge the development restrictions in court. (*Id.* at pp. 521–523.)

This court concluded that Ojavan's claims were barred by the statute of limitations, because the Public Resources Code requires an aggrieved landowner to petition for review within 60 days after the Commission's decision becomes final. (*Ojavan, supra,* 26 Cal.App.4th at p. 524.)[1] Although Ojavan was not a party to the original permits, it was bound by the inaction of its predecessor in interest. (*Id.* at p. 525.) "Since appellants' predecessors in interest waived their right to challenge the permit's TDC condition because they specifically agreed to and complied with the condition and accepted the benefits afforded by the permits and such predecessors in interest could not transfer or assign to appellants any legal rights greater than they themselves possessed . . . appellants obtained the property in question with the same limitations and restrictions which bound their predecessors in interest." (*Id.* at p. 527.)

 The reasoning in *Ojavan* applies here. Adamson agreed to the condition imposed by the Commission and executed the OTD, thereby accepting the benefit of the permit to expand its mobilehome park within the coastal zone. Adamson did not seek judicial intervention to avoid the condition. Serra, the successor owner of the Property, is bound by Adamson's waiver of its right to seek timely writ review.

---

[1] Public Resources Code section 30801 provides, "Any aggrieved person shall have a right to judicial review of any decision or action of the [coastal] commission by filing a petition for a writ of mandate . . . within 60 days after the decision or action has become final."

The condition imposed by the Commission became final in 1981. In 1983, Adamson executed and recorded the OTD, then proceeded to expand its mobilehome park as allowed by the permit. By its own terms, the OTD is binding on Serra, as Adamson's successor in interest. The Commission's preparations to accept the OTD are a formality, occurring over 20 years after the permit decision became final. The period in which to challenge the original permit was not revived in 2002, when the OTD was about to be recorded by the Conservancy. (See *Ojavan, supra,* 26 Cal.App.4th at p. 525 [60-day writ period starts when the permit is granted, not when the permit conditions are enforced years later].)

3. *Inverse Condemnation Claim*

■ Serra maintains that the 60-day limitations period does not apply because the Commission is carrying out an unconstitutional taking of Serra's property. The Fifth Amendment requires the payment of just compensation for public taking of private property. (*First Lutheran Church v. Los Angeles County* (1987) 482 U.S. 304, 314–315 [96 L.Ed.2d 250, 107 S.Ct. 2378].) Inverse condemnation occurs when there is a public taking of (or interference with) land without formal eminent domain proceedings. (*Id.* at p. 316.)

■ Serra is not the first property owner to attempt a belated inverse condemnation action, years after the Commission issues a conditional permit. Attempts to make an end run around the 60-day writ petition limitations period in Public Resources Code section 30801 do not succeed.

■ Compliance with procedural writ requirements "remains a necessary predicate to institution of inverse condemnation proceedings." (*Rossco Holdings Inc. v. State of California* (1989) 212 Cal.App.3d 642, 657 [260 Cal.Rptr. 736].) "Regardless of whether [the plaintiff] pleads its cause of action as one for inverse condemnation or as a denial of due process, the essential underpinning of its recovery is the invalidity of the administrative action. That action must be reviewed by petition for writ of administrative mandate. Failure to do so renders the administrative action immune from collateral attack." (*Id.* at p. 660.)

■ The rule requiring timely writ review holds true even when the aggrieved individuals asserting inverse condemnation are successors in interest to prior owners who accepted the burdens and benefits of the Commission's conditional permits. (*Ojavan, supra,* 26 Cal.App.4th at pp. 524–525.) The plaintiffs in *Ojavan* acquired coastal land that was burdened by development restrictions recorded by the prior owner. This court concluded that the absence of a timely writ petition by the prior owner "results in waiver of any inverse condemnation and related claims" for the successor in interest. (*Id.* at p. 524.)

"Quite clearly, a property owner seeking to recover on an inverse condemnation claim against the Commission in a case such as this must first establish the invalidity of the condition the Commission sought to impose. An administrative mandate proceeding provides the proper vehicle for such a challenge. Even in the post-*First Lutheran* world, requiring that an inverse condemnation claim be joined with an administrative mandate action filed within 60 days after the Commission decision becomes final serves the salutary purpose of promptly alerting the Commission that its decision is being questioned and that the State may be liable for inverse condemnation damages." (*California Coastal Com. v. Superior Court* (1989) 210 Cal.App.3d 1488, 1496 [258 Cal. Rtpr. 567].) Once the Commission's permit decision becomes final, the affected property owner is estopped from relitigating the validity of the decision in a subsequent inverse condemnation action. (*Id.* at pp. 1499–1500, fn. 8.)

It bears noting that the proper administrative procedures were followed in the case Serra relies upon, *Nollan v. California Coastal Comm'n.* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141] (*Nollan*). The Commission required the Nollans to provide a public easement on their beachfront lot in Ventura as a condition of allowing them to demolish a tiny bungalow and build a decent-sized house. (*Id.* at pp. 827–828.) The Nollans protested and promptly filed a petition for a writ of mandate seeking to invalidate the condition. During the proceedings in superior court, the Nollans argued that the easement condition violated the takings clause of the Fifth Amendment. The inverse condemnation claim was thus preserved for review as the case wound its way to the Supreme Court. (483 U.S. at pp. 828–830.)

Serra attempts to avoid the finality of the Commission's original permit decision by arguing that it is merely challenging the Conservancy's acceptance of the OTD. No matter how the action is styled, it remains a collateral attack on a decision that has been final for two decades. The current claim derives solely from the Commission's 1981 permit condition, not from the formalities involved in enforcing that condition. The derivation is plain from an examination of Serra's first amended complaint, which alleges that the Commission's OTD condition bears no relationship to the expansion of Adamson's mobilehome park, seven miles distant from the Property. The Conservancy's actions in accepting the OTD do not revive the expired period in which to challenge the condition when it was originally imposed in 1981.

The opinion in *Daniel v. County of Santa Barbara* (9th Cir. 2002) 288 F.3d 375 (*Daniel*) is instructive. The Daniels purchased beachfront property in the 1990's. Their predecessor in interest granted an OTD in 1974 for a pedestrian and bicycle easement across the property, as a condition for obtaining the Commission's permission to subdivide the property. The OTD allowed a 25-year term of acceptance. Shortly after the Daniels purchased the property,

the county, as grantee, accepted the OTD, and the Daniels challenged the acceptance as an unconstitutional taking of their property. (288 F.3d at pp. 378–379.)

■ The Ninth Circuit concluded that the Daniels' claims were time-barred, whether based on the Commission's original exaction of the OTD in the 1970's, or on the county's acceptance of the OTD in the 1990's. (*Daniel, supra,* 288 F.3d at p. 380.) The court observed that an unjust takings claim ripens when (1) the administrative agency makes a final decision regarding the property owner's ability to develop the land, and (2) the property owner timely sought recompense through available state procedures. (*Id.* at p. 381, citing *Williamson County Regional Planning Commission v. Hamilton Bank* (1985) 473 U.S. 172, 186 195 [87 L.Ed.2d 126, 105 S.Ct. 3108]. Accord: *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 10–11 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*).) The Daniels' predecessors failed to act when the OTD condition was imposed. The claim was not revived by the acceptance of the OTD, which is simply the exercise of an existing option. (*Daniel, supra,* 288 F.3d at pp. 382–383.) The value of the dedicated property was exacted from the Daniels' predecessors, not from the Daniels, who purchased the property with full knowledge that title was clouded by the OTD. (*Id.* at p. 384.)

The reasoning of *Daniel* applies with equal force to the OTD involved in the present appeal. The Commission imposed the OTD condition in 1981, and though the state's exercise of its regulatory power was final at that time, any challenge to the exercise of power was waived. This case is factually distinguishable from *Palazzolo v. Rhode Island* (2001) 533 U.S. 606 [150 L.Ed.2d 592, 121 S.Ct. 2448], which does not address a landowner's waiver of state remedies following an adverse, final land use decision. The land use regulations challenged in *Palazzolo* had the *potential* to later effect a regulatory taking, once a specific proposal from a new owner was rejected. (See *Daniel, supra,* 288 F.3d at pp. 383–384, distinguishing *Palazzolo*.) Here, Adamson acquiesced in the state's imposition of a condition, and accepted the benefit of the permit to which the condition attached.

■ The *Daniel* case answers Serra's contention that the Commission had to stop all efforts to accept existing OTD's after the *Nollan* case was decided in 1987. As noted by the *Daniel* court, there is no doubt that a government body has the constitutional power to regulate or seize private property; the only issue is whether (or how much) it must pay for the property. (*Daniel, supra,* 288 F.3d at p. 384.) If a prior owner fails to demand compensation by pursuing all available state procedures, a subsequent owner cannot seek injunctive and declaratory relief to prevent the government from accepting an OTD. (*Id.* at p. 385.) By accepting title to property with full

knowledge that it is subject to an existing, recorded OTD, a landowner cannot claim that the exercise of the OTD amounts to a "taking." To secure a benefit (i.e., a development permit), the prior landowner conveyed away the very interest that the present owner now claims is being "taken" by the government.

### 4. Retroactivity

Serra argues in its reply brief, for the first time, that the *Nollan* case operates retroactively, reaching back to invalidate onerous permit conditions that were imposed years before *Nollan* was decided. Serra waived this argument on appeal by failing to raise it in the trial court or in its opening brief. (*Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 351 [100 Cal.Rptr.2d 854].)

The argument fails, in any event. In *Hensler,* the state Supreme Court noted that *First Lutheran Church v. Los Angeles County, supra,* 482 U.S. 304, did not operate to resuscitate inverse condemnation claims in cases where a property owner failed to follow state procedures for seeking just compensation. (*Hensler, supra,* 8 Cal.4th at p. 29 .) The Fifth Amendment leaves to the state the procedures by which just compensation may be sought. (*Id.* at p. 13; *Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 866 [50 Cal.Rptr.2d 242, 911 P.2d 429].) Even before the United States Supreme Court decided inverse condemnation cases dating from the 1980's, including *Nollan,* property owners had a remedy in California to avoid restrictions on land development, if their impact amounted to a taking. That remedy requires a timely judicial challenge to the restrictions. (*Hensler, supra,* 8 Cal.4th at p. 29.)

The same analysis applies here. No one pursued a judicial challenge to the OTD condition in this case when it was imposed in 1981. Neither *Nollan* nor any of the other Supreme Court cases cited by Serra operate retroactively to revive takings claims that were waived by inaction. There is no authority for allowing a takings claim to be made 20 years after the expiration of the applicable statute of limitations for challenging a final state land use permit decision.

## DISPOSITION

The judgment is affirmed.

Nott, J., and Doi Todd, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 20, 2004. Werdegar, J., did not participate therein. Brown, J., was of the opinion that the petition should be granted.