[No. B074494. Second Dist., Div. Two. June 22, 1994.]

OJAVAN INVESTORS, INC., et al., Plaintiffs and Appellants, v. CALIFORNIA COASTAL COMMISSION, Defendant and Respondent.

## COUNSEL

McMillan & Bloch, William W. Bloch and Shelly D. McMillan for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Jan S. Stevens, Assistant Attorney General, G. R. Overton and Daniel A. Olivas, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—Appellants, Ojavan Investors, Inc., and several other real estate investment corporations, appeal judgments of dismissal entered after the trial court sustained demurrers of respondent California Coastal Commission (the Commission), without leave to amend, as to appellants' petition for a writ of mandate and appellants' concurrently filed complaint for

declaratory relief and damages.[1] Appellants sought to stay enforcement of the Commission's cease and desist order which directed that appellants refrain from the sale, conveyance or transfer of certain real property in the area of Malibu Canyon and comply with all terms and provisions of the declarations of restrictions which run with the land and were recorded against the property by the previous owners.

The trial court sustained the Commission's demurrers to the petition and to the complaint on the grounds that appellants' suits were barred by the applicable 60-day statute of limitations (Pub. Resources Code, § 30801) and the doctrine of waiver, and that the Commission's cease and desist order was a privileged publication (Civ. Code, § 47) which constituted a defense to the tort causes of action alleged.[2] We agree with the trial court's ruling and affirm.

## Procedural and Factual Background

The present case involves the restrictions on the development of residential property as a result of the Commission's transfer of development credits program (TDC Program). To "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources" (Pub. Resources Code, § 30001.5, subd. (a)) and thus to satisfy a primary objective of the California Coast Act of 1976 (Pub. Resources Code, § 30000 et seq.) (Coastal Act), the Commission established the TDC Program. Pursuant to the TDC Program, the Commission has on numerous occasions approved new subdivisions and development projects in the area of Malibu and the Santa Monica Mountains on the condition that the project proponents arrange to extinguish, either by direct purchase or through involvement in government programs, the development capacity of other lots. The TDC Program thus conditions the issuance of coastal development permits on the extinguishment of development rights as to other building sites in the coastal zone, either by offering to dedicate a scenic easement or by filing declarations of restrictions, thereby waiving development rights and unifying separate lots into one parcel.[3] The present case involves two development projects which came under the TDC Program.

---

[1]The appeals have been consolidated.

[2]The complaint for damages alleged causes of action for slander of title, cloud on title and intentional interference with prospective economic advantage.

[3]The TDC Program has been recognized as a well-established mechanism by which the Commission, as well as other local governmental entities, attempts to balance a private property owner's ability to obtain development permits with the state's interest in protecting natural resources from unbridled development. (See *Rossco Holdings Inc.* v. *State of California* (1989) 212 Cal.App.3d 642, 648, 650-651 [260 Cal.Rptr. 736].) As a federal court observed in rejecting a landowner's constitutional challenge to a TDC Program in Marin

On December 19, 1979, and May 10, 1990, the Commission issued coastal development permits to David Leanse (who subsequently assigned his permit to another party) and Larry Thorne for development in the Malibu area within the coastal zone. The Commission approved Leanse's application for a 14-unit condominium project and Thorne's application for an 18-lot subdivision and the construction of tract homes. The projects were not directly related to each other, but the Commission found that they both created the same detrimental risk of adverse cumulative impact on the environment of the coastal zone. To mitigate adverse environmental impacts, the Commission conditioned permit approval on the applicants' participation in the TDC Program. Accordingly, the applicants agreed that prior to the issuance of a permit, they would provide evidence to the Commission that development rights for residential use had been extinguished on a specified number of other building sites in the coastal zone.

The permit applicants fulfilled the TDC condition by purchasing the right to have other, unrelated landowners record deed restrictions on their lots. Specifically, Thorne contracted with and paid Dan Bochner, and Leanse contracted with and paid Sophisticated Investments, Inc. (Sophisticated) to file restrictions on the coastal zone property owned by Bochner and Sophisticated. One type of restriction, the dedication of a scenic easement, extinguished the building rights on the affected lots and transferred such building rights to the permit applicants' property. Another type of restriction, the declarations of restrictions, merged the affected lots into larger parcels.

The declarations of restrictions on the properties owned by Bochner and Sophisticated were recorded with the Los Angeles County Recorder's Office on July 2, 1981 (declaration of restrictions No. 81-661205), July 23, 1984 (declaration of restrictions No. 84-875361) and June 7, 1990 (declarations of restrictions Nos. 90-1020016 and 90-1020017). As indicated by the language in the recorded declarations of restrictions, the conditional development permit issued by the Commission would have the effect of "recombin[ing] and unify[ing] the Subject lands into a single parcel for all purposes with respect to the lands included therein, including but not limited to sale, conveyance, development, taxation or encumbrance [so that] the proposed development is in conformity with the [Coastal] Act . . . ." The declarations of restrictions also acknowledged that the landowners had agreed to recombine the subject lots in exchange for "valuable consideration" paid by

County, "[A] finite amount of development is permitted in the area. The County is rightly indifferent as to who does the development. It lets the market decide the price. . . . The regulation permitting the accumulation of transfer rights is rationally related to the overall purpose of preserving agriculture in the area." (*Barancik* v. *County of Marin* (9th Cir. 1988) 872 F.2d 834, 837, cert. den. (1989) 493 U.S. 894 [107 L.Ed.2d 192, 110 S.Ct. 244].)

the permit holders, that each restriction "shall constitute a covenant running with the land . . . [and] shall bind the [landowners] and their successors, heirs, and assigns in perpetuity and shall benefit the People of the State of California," and that any breach of the declarations of restrictions shall render the landowners "or their successors liable pursuant to the provisions of [the Coastal Act]."

As a result of the declarations of restrictions, 77 former individual lots were recombined into 2 large lots, one owned by Bochner and the other by Sophisticated, and the former 77 lots could not be sold off individually. In December of 1983, Sophisticated sold its interest in its recombined lot to Bochner.

In February of 1991, without the knowledge or approval of the Commission, appellants purchased from Bochner 49 of the 77 deed-restricted lots. Appellants allege that prior to their purchases, they "had conducted diligent searches of the official records of the Los Angeles County Recorder and title companies, and no impediments to the purchase of the individual lots were found," although the declarations of restrictions had been previously filed and stamped "RECORDED IN OFFICIAL RECORDS RECORDER'S OFFICE LOS ANGELES COUNTY CALIFORNIA." Between April 2, 1991, and January 26, 1992, six of the appellants who had purchased individual deed-restricted lots sold sixteen of those lots to third parties.

After the Commission had been alerted to appellants' purchases and to their sales of the deed-restricted lots, the Commission issued a temporary cease and desist order and recorded notices of violations on the affected lots to forestall further breach of the declarations of restrictions. Appellants refused to admit that the lots were deemed restricted and rejected all requests to rescind the sales. In May and July of 1992, appellants advertised several of the restricted lots for public auction. Appellants apparently admitted in the auction brochure the deed-restricted nature of the lots, as indicated by the following language in the brochure: "Unbelievably cheap, due to restrictions on development. Economists tell us the government is broke, and only development money can fill the bureaucrats' maws. They'll *have* to develop!"

Thereafter, the Commission held a duly noticed public hearing and issued a permanent cease and desist order. The order prohibited "the sale, conveyance or transfer in any manner of any interest" in the real property at issue unless there is compliance "in all respects with the terms and provisions of [the] Declarations of Restriction recorded against said properties as Instrument Numbers 81-661205, 90-1020016, and 90-1020017." The Commission's order was dated August 20, 1992.

On October 13, 1992, appellants filed a petition for writ of mandate (see Code Civ. Proc., § 1094.5) and a separate verified complaint for damages and declaratory relief against the Commission. Neither the permit holders nor the prior owners of the lots in question are parties to the petition and complaint. At the heart of both appellants' petition and complaint are attacks upon the declarations of restrictions on various constitutional and statutory grounds, and therefore an attack upon the permanent cease and desist order issued by the Commission to enforce the permit's conditions.

Following the Commission's successful demurrer to the petition for writ of mandate, on the ground that the petition was barred by the statute of limitations and the doctrine of waiver, appellants moved to set aside the judgment. The court ruled that appellants had failed to establish any of the asserted grounds to vacate the judgment, that the proposed amended petition for writ of mandate still would not survive a demurrer and that its judicial notice of the declarations of restrictions conclusively established that the restricted coastal development permits had been issued in December of 1979 and May of 1990. The court also denied the petition as untimely and denied the motion for reconsideration of the order of dismissal as untimely.

The Commission also successfully demurred to appellants' companion complaint for damages and declaratory relief. The court ruled that appellants' only remedy was by way of a timely petition for a writ of mandate and that the tort causes of action were not only barred by the statute of limitations but also by the statutory privileged publication doctrine in Civil Code section 47.

Appellants appeal the judgment entered on January 21, 1993, dismissing the petition for writ of mandate, the related order dated March 12, 1993, denying the motion to set aside that judgment, and the judgment entered on March 26, 1993, dismissing the complaint. ■■■ Pursuant to this court's order, the appeals have been consolidated.[4]

---

[4]On appeal, the Commission has moved for partial dismissal of the appeal and requested imposition of sanctions based on the theory that an order denying reconsideration of the sustaining of a demurrer is a nonappealable order. An order denying a motion for reconsideration is appealable where it is based upon new grounds not entertained in conjunction with the original order or judgment. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 477 [121 Cal.Rptr. 477, 535 P.2d 341]; see *Santee* v. *Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 710 [269 Cal.Rptr. 605].) In an effort to determine whether the order denying reconsideration was truly a final determination of the rights and obligations of the parties and thus appealable, or was merely the result of a sterile attempt to have a previous appealable judgment set aside, we need not assess whether the motion for reconsideration contained any significant new evidence or legal principles. (See *Tunis* v. *Barrow* (1986) 184 Cal.App.3d 1069, 1075-1076 [229 Cal.Rptr. 389].) Under any view of the

DISCUSSION

I. *Appellants' Claims Are Barred by the Statute of Limitations*

■ Appellants' petition for writ of mandate and complaint are barred by the statute of limitations in Public Resources Code section 30801, which provides as follows: "Any aggrieved person shall have a right to judicial review of any decision or action of the commission by filing a petition for a writ of mandate in accordance with Section 1094.5 of the Code of Civil Procedure, within 60 days after the decision or action has become final." Although appellants filed their petition and complaint within 60 days of the August 20, 1992, cease and desist order, appellants' challenges amount solely to an attempt to litigate the Commission's right to enforce permits issued on December 19, 1979, and May 10, 1990. Appellants were not parties to the original permits, they purchased the lots in question eight months after the last of the four declarations of restrictions were recorded, and they filed suit to challenge the permits between two and twelve years after the Thorne and Leanse permits were issued. It is well settled that a landowner who claims that a permit condition imposed by the Commission constitutes a taking must first establish the invalidity of the condition by way of a timely petition for a writ of administrative mandamus. Failure to file such a timely petition results in waiver of any inverse condemnation and related claims. (*California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488, 1496 [258 Cal.Rptr. 567].)

The present case is somewhat similar to the situation in *Rossco Holdings Inc.* v. *State of California, supra,* 212 Cal.App.3d 642. In *Rossco Holdings,* the plaintiff-landowners, in exchange for development permits, agreed to participate in the Commission's TDC Program. Although the landowners complied with the conditions of the development permits, including the TDC condition, the landowners thereafter filed a complaint against the Commission alleging inverse condemnation, denial of due process and civil rights violations. The Commission demurred and alleged, among other grounds, that the claims were barred by the 60-day statute of limitations. (*Id.* at pp. 648-649.) The trial court sustained the demurrer without leave to amend but only as to some claims, and both parties appealed. (*Id.* at p. 650.) The Court of Appeal held that all the landowners should have been dismissed with prejudice (*id.* at p. 662) and reasoned as follows: "Regardless of whether [a landowner] pleads its cause of action as one for inverse condemnation or as a denial of due process, the essential underpinning of its recovery is the invalidity of the administrative action. That action must be reviewed by [a

trial court's order denying reconsideration, appellants' claims are barred, as discussed hereinafter. The Commission's request for the imposition of sanctions is denied.

timely] petition for writ of administrative mandate. Failure to do so renders the administrative action immune from collateral attack." (*Id.* at p. 660.)

The only salient distinction between the facts in *Rossco Holdings* and the situation here is that the landowners in *Rossco Holdings* were the parties granted the permits, and appellants here are third parties who are bound by permits issued to others. Contrary to appellants' assertion, there is nothing fundamentally unfair or "Kafkaesque" about their inability because of a lack of standing to have challenged coastal development permits issued years ago to other parties and their present inability to challenge, because of the statute of limitations, the same permits which now affect them. To the contrary, it would be illogical and unfair to grant third parties, such as appellants, the right to challenge permits when such a challenge would be time barred if brought by the party who was initially granted the permit. A permit holder also must have legal confidence after a definite point in time in investing financial resources to implement an approved development. Once the 60-day statute of limitations has run, the permit issued must be deemed good as against the world.

We therefore hold that the time to challenge coastal development permits issued pursuant to the TDC Program is within the statutory 60-day period after issuance of the permits (Pub. Resources Code, § 30801), not when a party or a successor in interest elects to violate declarations of restrictions imposed pursuant to the permits, and a cease and desist order ensues. There is no legal impropriety or fundamental unfairness regarding the limited legal challenges available to a successor in interest to pursue a matter which prior to the parties' interest was time barred.[5] Indeed, concluding that appellants must be bound by what their grantee had to convey, i.e., property limited by permits and declarations of restrictions which had not previously been challenged, is particularly appropriate here. Appellants were apparently aware of the deed-restricted nature of the property they bought for speculative investment, as indicated by the advertising language in the auction brochure, which revealed knowledge of the limited and restricted nature of the lots.[6]

Appellants also assert that their claims are not time barred because no permits were actually issued to the original parties (Leanse and Thorne).

---

[5]We note that appellants would have been entitled to but did not challenge any flaws as to the cease-and-desist hearing itself and any failure to follow requisite statutory guidelines regarding the hearing.

[6]Appellants do not challenge the restrictions which dedicated scenic easements and thus extinguished building rights on the lots. Appellants challenge only the declarations of restrictions which merged the lots into two parcels and thus effectively thwarted their efforts to auction lawfully the numerous smaller parcels which were essentially rendered valueless by the extinguishment of building rights.

According to appellants, permits were not issued because the documents purporting to be permits contained language indicating that such documents are merely conditional permits, with the actual permits to be issued later after numerous conditions have been satisfied. However, whether the permits in question were conditional or unconditional, they still existed and were permits.

■ Equally unavailing is appellants' assertion that there was no prior statutory notice given to them or to their predecessors in interest prior to any public hearings concerning the permits affecting appellants' lots, and that there were no permits which affected appellants' lots because the lots were not mentioned in the permits. The failure to have given appellants statutory notice of the permit hearings is understandable since they did not own the property in question in 1979 and 1990, the years the permits were issued. To the extent that any predecessor in interest lacked notice, appellants have no standing to raise such a complaint. As to the failure of the Leanse and Thorne permits to refer to the lots subsequently purchased by appellants or to mention any restrictions on the lots, such failure is of no consequence in view of the declarations of restrictions which were duly filed in the county recorder's office. It is well settled that the burdens of permits run with the land once the benefits have been accepted. (See *County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510-511 [138 Cal.Rptr. 472, 564 P.2d 14]; *Pfeiffer* v. *City of La Mesa* (1977) 69 Cal.App.3d 74, 78 [137 Cal.Rptr. 804].) Accordingly, the declarations of restrictions run with the land and bind appellants even though they were not parties to the deed restrictions.

Moreover, and also contrary to appellants' assertion, the provisions in Civil Code sections 1457 et seq. regarding the transfer of obligations do not constrain the ability of a declaration of restrictions to run with the land. Civil Code section 1460, by its terms, applies only to "covenants" which are "contained in grants of estates in real property." The only "covenants which run with the land" are those described in that statutory scheme. (Civ. Code, § 1461.) However, the burdens of permits reflected in declarations of restrictions run with the land and are not within the ambit of the provisions of Civil Code section 1457 et seq., which define only the parameters of covenants contained in grants, and not conditions contained in coastal development permits.

■ Finally, appellants assert that the statute of limitations bar, as well as the related defense of waiver discussed hereinafter, is premised on the trial court's improper judicial notice of the declarations of restrictions. In support of the demurrer to the petition for writ of mandate, the Commission requested that the trial court take judicial notice pursuant to Evidence Code

section 452, subdivision (c) of the four declarations of restrictions. In support of the demurrer to the complaint for damages, the Commission requested that the trial court take judicial notice of only one of the declarations of restrictions, since appellants had attached the other three to their verified complaint. The trial court thereafter dismissed both suits based upon the declarations of restrictions.

The Commission explicitly crafted the declarations of restrictions and required their recordation pursuant to the Thorne and Leanse permits. The documents thus were not prepared by a private party and merely on file with a state agency (cf. *People* v. *Thacker* (1985) 175 Cal.App.3d 594, 598 [221 Cal.Rptr. 37] [articles of incorporation and other documents prepared by a private party and filed with the Secretary of State may not be judicially noticed]), and the trial court properly took judicial notice of the official acts of a government department (Evid. Code, § 452, subd. (c)) in ruling on the demurrer. (Code Civ. Proc., § 430.70.) Accordingly, the trial court properly granted the demurrer based upon its analysis of the permits, declarations of restrictions and the applicable statute of limitations.

## II. *The Doctrine of Waiver*

As previously noted, appellants' predecessors in interest who owned the lots in question recorded the declarations of restrictions in exchange for "valuable consideration" and signed restrictions an intent to recombine and unify the lots in question, with any breach in the declarations of restrictions rendering the landowners or their successors in interest liable pursuant to the provisions of the Coastal Act. "A landowner cannot challenge a condition imposed upon the granting of a permit after acquiescence in the condition by either specifically agreeing to the condition or failing to challenge its validity, and accepting the benefits afforded by the permit." (*Rossco Holdings Inc.* v. *State of California, supra*, 212 Cal.App.3d at p. 654.)

Since appellants' predecessors in interest waived their right to challenge the permit's TDC condition because they specifically agreed to and complied with the condition and accepted the benefits afforded by the permits and such predecessors in interest could not transfer or assign to appellants any legal rights greater than they themselves possessed (see 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 948, p. 844; Code Civ. Proc., § 368), appellants obtained the property in question with the same limitations and restrictions which bound their predecessors in interest. Although there must be a knowing, voluntary and intelligent waiver of a constitutional right, such as the Fifth Amendment right to be free from a taking of property without just compensation, it is not the Fifth Amendment

right which appellants have waived. Rather, appellants have waived, by their purchase of deed-restricted lots, any right to a property interest greater than that conveyed by their predecessors in interest. As with the analogous situation of covenants which run with the land (Civ. Code, § 1457 et seq.), appellants can take "only the title [the prior owner] had and subject to prior recorded instruments." (*Oceanside Community Assn.* v. *Oceanside Land Co.* (1983) 147 Cal.App.3d 166, 176, fn. 7 [195 Cal.Rptr. 14].) The trial court therefore properly sustained the demurrer on the additional ground of the doctrine of waiver.

At oral argument, in support of their contention that the TDC program runs afoul of the California Subdivision Map Act relating to merger (Gov. Code, § 66410 et seq.), appellants relied on the recent California Supreme Court decision in *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725 [29 Cal.Rptr.2d 804, 872 P.2d 143].) The opinion in that case concludes that the Map Act impliedly prempts "any local zoning ordinance provision that purports to require, as a condition to issuance of a development permit, merger of parcels that the county could not compel under [Government Code] section 66451.11." (*Id.* at p. 732.) We need not decide if the TDC Program's lot unification procedures are also prempted by the Map Act, since we have concluded that the trial court properly sustained the Commission's demurrer on the basis of the statute of limitations and the doctrine of waiver. The petitioners in *Morehart* who applied for a coastal development permit did not obtain one because they did not agree to any merger of their parcels; instead they petitioned for a writ of mandate. In contrast, Thorne and Leanse were granted their permits and appellants' predecessors in interest agreed to the mergers. Appellants purchased the unified parcels with notice of the recorded declarations of restrictions and cannot at this late date assert claims their predecessors could have presented but did not.

III. *The Cease-and-desist Order Is a Privileged Communication*

█ In sustaining the demurrer to the complaint for damages, the trial court deemed the causes of action for slander of title, cloud on title and intentional interference with prospective economic advantage as barred pursuant to the privileged publication doctrine in Civil Code section 47. Civil Code section 47, subdivision (b) provides that a "privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding, or . . . in any other official proceeding authorized by law." This privilege "extends to quasi-judicial as well as judicial proceedings" (*Lebbos* v. *State Bar* (1985) 165 Cal.App.3d 656, 667 [211 Cal.Rptr. 847]), and the Commission's hearings are quasi-judicial. (*Rossco Holdings Inc.* v. *State of California,* *supra,* 212 Cal.App.3d at p. 658.) The immunity from liability afforded by a

privileged communication applies to actions for defamation as well as to bar other tort actions based on publications in protected proceedings, including a cause of action for interference with prospective economic advantage. (*Lebbos* v. *State Bar, supra,* 165 Cal.App.3d at p. 667.) Such immunity is properly raised by demurrer. (*Wilton* v. *Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565, 569 [22 Cal.Rptr.2d 471].) Therefore, the trial court correctly deemed the relevant causes of action barred by Civil Code section 47.

## DISPOSITION

The judgments are affirmed.

Gates, J., and Nott, J., concurred.

A petition for a rehearing was denied July 13, 1994, and appellants' petition for review by the Supreme Court was denied September 8, 1994.