Filed 1/30/15  Modified and Certified for Publication 2/26/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF BERKELEY, | |
|     Plaintiff and Respondent, | A142162 |
|        v. | |
| 1080 DELAWARE, LLC, | (Alameda County |
|     Defendant and Appellant. | Super. Ct. No. RG13672597) |

Defendant 1080 Delaware, LLC (1080 Delaware), the owner of a mixed-use residential rental project in Berkeley, appeals from a judgment compelling it to comply with a condition in the use permit for the project requiring compliance with the inclusionary housing ordinance of the City of Berkeley (City). Defendant contends the City may not enforce the condition, included in the use permit obtained by former owners of the property, because the ordinance has subsequently been preempted by the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.; the Costa-Hawkins Act). Although the City does not dispute that its ordinance has now been preempted by the Costa-Hawkins Act, we agree with the City that it may nonetheless enforce the condition of the use permit, the validity of which was not challenged in the many years since the permit was issued. We shall therefore affirm the judgment.

**Background**

In July 2004, the City issued to Said Adeli-Nadjafi (Adeli) a use permit for the construction of a mixed-use building which currently has the address of 1080 Delaware Street, consisting of 51 residential rental units and ground floor commercial space.

1

Condition 10 of the use permit provides as follows: "Before submission for building permit, the applicant shall submit floor plans and schedules, acceptable to the Zoning Officer, showing the location of each inclusionary unit and the sales or rental prices. Said plans and schedules must adequately demonstrate that the unit types are reasonably dispersed throughout the project, are of the same size and contain, on average, the same number of bedrooms as the market-rate units and that the unit rent or sales price complies with Chapter 23C.12 of the Zoning Ordinance."

Chapter 23C.12 of the Berkeley Municipal Code (Chapter 23C.12), first adopted in 1986, sets forth what is referred to as the "Inclusionary Housing Ordinance." Chapter 23C.12 was designed to comply with Government Code section 65580 et seq. requiring a general plan to contain a housing element stating how the local agency will accommodate its share of the regional need for affordable housing. The ordinance requires that 20 percent of all newly constructed residential units be reserved for households with below-median incomes and rented at prices that are, under a prescribed formula, below market prices and affordable to such households. (Chapter 23C.12, § 23C.12.030.A.)[1] In *Palmer/Sixth Street Properties, L.P. v. City of Los Angeles* (2009) 175 Cal.App.4th 1396, 1405-1406 (*Palmer*), the court held that a comparable ordinance adopted by the City of Los Angeles was preempted by the Costa-Hawkins Act, which was enacted in August 1995 and provides, generally, that residential landlords may "establish the initial rental rate for a dwelling or unit" (Civ. Code, § 1954.53, subd. (a)). The City of Berkeley acknowledges that under this decision, it is now precluded from conditioning the issuance of use permits on compliance with its Inclusionary Housing Ordinance.

Adeli (and his related company, Berkeley Delaware Court, LLC) did not complete construction of the Delaware Street project for more than seven years after obtaining the use permit. Adeli's financial difficulties led to the filing of two bankruptcy petitions. Ultimately in 2011, First-Citizens Bank & Trust Company (First-Citizens), which had

_____

[1] At least 50 percent of the affordable units shall be rented to households with federal Section 8 vouchers, under which the owner receives market rent. (Chapter 23C.12, § 23C.12.060.C.)

2

financed the project, obtained title to the property by recording a deed-in-lieu of foreclosure. In 2013, First-Citizens sold the property to 1080 Delaware, its current owner.

Adeli executed the deed in lieu of foreclosure pursuant to a settlement agreement with First-Citizens entered as of May 4, 2010, under which the bank agreed not to record the instrument unless Adeli failed to meet its obligations under the settlement agreement. In August 2011, before Adeli defaulted and the deed-in-lieu was recorded, he entered into a "Regulatory Agreement" with the City, specifying the 10 "inclusionary units" in the project that would be rented or sold to low and very-low income households at less than market rates affordable to those households. Adeli then began renting units in the project.

In April 2012, prior to the purchase of the property by 1080 Delaware, its attorney wrote to the City, stating his opinion that neither the use permit nor the Regulatory Agreement applied to the project,[2] that the City's Inclusionary Housing Ordinance was unenforceable following the *Palmer* decision, and that "should our client complete the purchase of the Project, our client does not intend to comply with the inclusionary requirements." City promptly indicated its disagreement. 1080 Delaware nonetheless proceeded with the purchase on April 26 and, subsequently, confirmed that it would not comply with condition 10 of the use permit or provide any inclusionary units in the project.

In March 2013, the City filed the present action, seeking a declaration that condition 10 of the use permit and the Regulatory Agreement "are valid and in full force and effect and that [1080 Delaware] is obligated to fully comply with both" documents, and requesting injunctive relief compelling compliance. The complaint contains two causes of action, the first of which is captioned "Violation of Municipal Ordinance" and alleges that the use permit "runs with the land and is binding on subsequent owners," that the owner of the project "is required to comply with the inclusionary housing

---

[2] The letter stated the Regulatory Agreement and condition 10 of the use permit no longer apply because paragraph 21.D of the Regulatory Agreement provides that " '[a]ny party, and its successors and assigns, receiving title to an Inclusionary Unit through a . . . deed in lieu of foreclosure . . . , or by any conveyance or transfer thereafter, shall receive the title free and clear of the provisions of this Regulatory Agreement . . . .' "

3

requirements of Chapter 23C.12," and that the "refusal to comply with [condition 10 of the use permit] is a violation of [Berkeley Municipal Code s]ection 23A.12.010 and the Regulatory Agreement." The cause of action alleges that both condition 10 and the Regulatory Agreement are valid and effective, "but that even if the Regulatory Agreement were ineffective, [condition 10] remains effective." The second cause of action is labeled "Breach of Contract" and alleges that 1080 Delaware has "breached, and threatens to continue to breach, the Regulatory Agreement."

The answer of 1080 Delaware pleaded as affirmative defenses, among other things, that "[t]he Inclusionary Housing Ordinance is preempted by State law and void, in particular, by the rent decontrol provisions of the Costa-Hawkins Act, [Civil] Code [section] 1954.50 et seq. See *Palmer/Sixth Street Properties, L.P. v. City of Los Angeles*, (2009) 175 Cal App. 4th 1396. To the extent the Use Permit or the Regulatory Agreement are relied upon by the City to implement or enforce the terms of the preempted Inclusionary Housing Ordinance, the Use Permit and the Regulatory Agreement are likewise void and unenforceable." The answer also alleged that under paragraph 21.D of the Regulatory Agreement (see fn. 2, *ante*), the agreement "does not bind 1080 Delaware, a successor to an institutional lender who took title by deed in lieu of foreclosure."

City eventually moved for summary adjudication and the court granted the motion as to the first cause of action but, as to the second cause of action, found triable issues and denied the motion. In granting the motion as to the first cause of action, the trial court reasoned as follows: "All parties appear to agree that Berkeley Municipal Code § 23C.12, which sets forth inclusionary housing requirements for rental units, is preempted by the Costa-Hawkins Rental Housing Act, as held in *Palmer/Sixth Street Properties LP v. City of Los Angeles* (2009) 175 Cal.App.4th 1396. The City is precluded from enforcing a void ordinance. [¶] The City's First Cause of Action, however, does not seek to enforce Municipal Code § 23C.12. Rather, it seeks to enforce compliance with Condition of Approval No. 10 in a Use Permit issued in 2004. A writ for administrative mandamus is a landowners' excusive remedy for challenging the propriety of permit conditions, and the owner's failure to pursue that remedy in a timely manner bars the owner (or subsequent

4

owner) from challenging the condition nine years later. (See, e.g., *City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713 and *Pfeiffer v. City of La Mesa* (1977) 69 Cal.App.3d 74, 78.) Once issued, a conditional use permit runs with the land and binds successor owners. (See *Anza Parking Corp. v. City of Burling*[*ame*] (1987) 195 Cal.App.3d 855, 858.) It is undisputed that no action seeking administrative mandamus concerning the subject use permit has been brought at any time since its issuance in 2004."

Following the entry of the summary adjudication order, the City dismissed the second cause of action with prejudice and the court entered judgment directing 1080 Delaware to "comply with Condition No. 10 of City of Berkeley Use Permit No. 02-10000081 forthwith by 'submit[ting] floor plans and schedules, acceptable to the Zoning Officer, showing the location of each inclusionary unit and the sales or rental prices. Said plans and schedules must adequately demonstrate that the unit types are reasonably dispersed throughout the project, are of the same size and contain, on average, the same number of bedrooms as the market-rate units and that the unit rent or sales price complies with Chapter 23C.12 of the Zoning Ordinance.' The requirement to comply with Condition #10 includes full compliance with Chapter 23C.12 of the Zoning Ordinance."

Notice of appeal was timely filed by 1080 Delaware.

## Discussion

As the parties agree, we review the issues in this case de novo, but we conclude that the trial court properly analyzed the legal issues presented. Although some of the wording in the City's complaint misleadingly suggests that the City is seeking to enforce the Inclusionary Housing Ordinance, neither the City's position nor the trial court's decision rests on the continuing enforceability of the ordinance. The parties agree, and the trial court explicitly acknowledged, that under *Palmer, supra,* 175 Cal.App.4th 1396, the City's Inclusionary Housing Ordinance has been preempted by the Costa-Hawkins Act. Thus, there is no dispute with the contention that the ordinance itself is now unenforceable. The issue, however, is whether the City may enforce condition 10 of the

5

use permit, which requires compliance with the ordinance, even though subsequent to issuance of the use permit the ordinance was held to have been preempted.

As the authorities cited by the trial court hold, the answer is that such a use condition may be enforced if not challenged by a writ of administrative mandate within the 90-day time period prescribed by statute. (Code Civ. Proc., § 1094.6.) In *City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713, the City of Santee contended, as does the City here, that "the exclusive remedy for challenging allegedly improper conditions on a special permit is administrative mandamus, which [the permit holder] conceded it failed to timely seek. . . . [T]he law is firmly established in this state that under these circumstances administrative mandamus constituted [the permit holder's] exclusive remedy to challenge the propriety of the conditions the City [of Santee] imposed upon the approval of the . . . permit." (*Id.* at p. 718.) Because the permit holder failed to pursue the exclusive remedy of administrative mandamus, he was estopped from challenging the validity of the permit condition in subsequent proceedings. (*Id.* at p. 719.) In *Pfeiffer v. City of La Mesa* (1977) 69 Cal.App.3d 74, 78, the court deemed it "fundamental that a landowner who accepts a building permit and complies with its conditions waives the right to assert the invalidity of the conditions." The court there also pointed out that the proper method for challenging the validity of permit conditions is by writ of mandate pursuant to Code of Civil Procedure section 1094.5, and that the recipient of a permit could not "convert" the right to institute such proceedings into a cause of action for other relief (in that case, a cause of action for inverse condemnation). " 'A landowner cannot challenge a condition imposed upon the granting of a permit after acquiescence in the condition by either specifically agreeing to the condition or failing to challenge its validity, and accepting the benefits afforded by the permit.' [Citation.]" (*Ojavan Investors, Inc. v. California Coastal Com.* (1994) 26 Cal.App.4th 516, 527.)

In the trial court, 1080 Delaware disputed this conclusion by reliance on the more recent decision of the California Supreme Court in *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 (*Travis*). However, the trial court correctly pointed out that 1080 Delaware misread *Travis,* and that this decision "clearly held that an action seeking to

6

invalidate a permit condition based on an ordinance preempted by state law, filed by property owners (the Sokolows) who failed to timely challenge permit conditions through a petition for a writ of mandate, was in fact barred by their failure to do so. [Citation.] Second, to the extent that *Travis* contemplates that a party could file a separate action (other than a petition for writ of mandate) challenging a preempted or unconstitutional zoning ordinance, such an action would have to be filed within three years of the enactment of the statute that preempts the ordinance. [Citation.] Here, it is undisputed that [1080 Delaware] did not file any action challenging [Berkeley] Municipal Code § 23C.12 within three years of the enactment of the Costa-Hawkins Rental Housing Act in 1996." In *Travis,* different property owners petitioned for writs of mandate to enjoin enforcement of permit conditions imposing restrictions on second dwelling units on the ground that the ordinance authorizing those restrictions had been preempted by state statutes, including the Costa-Hawkins Act. Travis, whose petition was filed within 90 days of final administrative action on his permit, was entitled to pursue his challenge; but the Sokolows, who had not challenged the condition until almost 11 months after approval of their permit application, were not. (*Travis*, at p. 767.) *Travis* thus provides controlling authority for the conclusion that because of the failure to timely challenge the use permit, condition 10 of the permit remains enforceable despite the subsequent determination that the ordinance has been preempted.[3]

Moreover, the conditions of the permit remain enforceable against a subsequent owner of the property. "Since [1080 Delaware's] predecessors in interest waived their right to challenge the permit's . . . condition because they specifically agreed to and complied with the condition and accepted the benefits afforded by the permits and such predecessors in interest could not transfer or assign to [1080 Delaware] any legal rights greater than they themselves possessed [citation], [1080 Delaware] obtained the property

---

[3] And, refuting another of 1080 Delaware's arguments, the Supreme Court also rejected the suggestion "that preemption by state law renders a local ordinance not only unenforceable but also 'null and void' . . . . A preempted ordinance, while it may lack any legal effect or force, does not cease to exist; . . . ." (*Travis, supra,* 33 Cal.4th at p. 775.)

in question with the same limitations and restrictions which bound [its] predecessors in interest. . . . [1080 Delaware has] waived, by [its] purchase of deed-restricted lots, any right to a property interest greater than that conveyed by their predecessors in interest. As with the analogous situation of covenants which run with the land (Civ. Code, § 1457 et. seq.), [1080 Delaware] can take 'only the title [the prior owner] had and subject to prior recorded instruments. [Citation.]" (*Ojavan Investors, Inc. v. California Coastal Comm.*, *supra,* 26 Cal.App.4th at pp. 527-528; see, e.g., *Anza Parking Corp. v. City of Burlingame* (1987) 195 Cal.App.3d 855, 858.)

None of the cases cited by 1080 Delaware casts any doubt on these conclusions. In *Bright Development v. City of Tracy* (1993) 20 Cal.App.4th 783, 797, the Court of Appeal held that a developer was not required to comply with the City of Tracy's policy to require the undergrounding of offsite utilities because the City of Tracy could not show that "a written ordinance, policy or standard . . . was in effect" when the developer's vesting tentative map application was deemed complete. In the present case, in contrast, the City of Berkeley adopted its inclusionary housing ordinance in 1986, long before the contested use permit was issued in 2004. In *Palazzolo v. Rhode Island* (2001) 533 U.S. 606, the United States Supreme Court held that a property owner whose permit applications were denied could assert an inverse condemnation claim even though the denials were based on regulations that had been adopted before the current owner acquired title to the property. The court based its decision on the fact that the takings claim was not ripe when the regulation was adopted and did not become viable until the permit applications were denied. "A blanket rule that purchasers with notice have no compensation right when a claim becomes ripe is too blunt an instrument to accord with the duty to compensate for what is taken." (*Id*. at p. 628.) "A challenge to the application of a land-use regulation . . . does not mature until ripeness requirements have been satisfied . . . ; until this point an inverse condemnation claim alleging a regulatory taking cannot be maintained. It would be illogical, and unfair, to bar a regulatory takings claim because of the post-enactment transfer of ownership where the steps necessary to make the claim ripe were not taken, or could not have been taken, by a previous owner." (*Ibid*.)

8

In the present case, in contrast, a challenge to the validity of condition 10 was ripe, and indeed required to be asserted, when the use permit was issued. Unlike the situation in *Palazzolo,* denying the current owner the right to assert the challenge does not mean that the challenge never could have been asserted.[4]

Finally, there is no merit to 1080 Delaware's assertion that the trial court erred in granting summary judgment because of the triable issues the court found to exist as to the meaning and continuing effectiveness of the Regulatory Agreement. As the City argues, the Regulatory Agreement is subordinate to both the ordinance and the use permit. It was entered to implement condition 10 of the use permit, as explicitly required by the provisions of the Inclusionary Housing Ordinance. Even if, as 1080 Delaware contends, the Regulatory Agreement does not survive the deed in lieu of foreclosure by which First-Citizens acquired title, condition 10 persists. If the Regulatory Agreement entered by Adeli is no longer in effect, then under the terms of the ordinance and the trial court's judgment, 1080 Delaware must itself specify the units that it will lease at below market rates. With the dismissal of the second cause of action alleging a breach of the Regulatory Agreement, there was no impediment to the entry of final judgment determining that 1080 Delaware is bound by and must comply with condition 10 of the use permit.

## Disposition

The judgment is affirmed.

---

[4] Although not dispositive, we point out the additional fact that the Costa-Hawkins Act was adopted in 1995 and was in effect when the challenged use permit was issued in 2004. Thus, although *Palmer* was not decided until 2009, the preemption challenge could have been asserted promptly after issuance of the use permit. In all events, by accepting the benefits of the use permit, Adeli agreed to comply with the provisions of the inclusionary housing ordinance, whether or not subsequently invalidated.

_____
                                        Pollak, Acting P. J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF BERKELEY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>1080 DELAWARE, LLC,<br><br>    Defendant and Appellant. | A142162<br><br>(Alameda County<br>Super. Ct. No. RG13672597)<br><br>ORDER MODIFYING OPINION<br>AND CERTIFYING OPINION<br>FOR PUBLICATION;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on January 30, 2015, be modified as follows:

On page 1, line 6, the words "held to have been" are to be inserted between the words "been" and "preempted" so that the sentence reads:

> Defendant contends the City may not enforce the condition, included in the use permit obtained by former owners of the property, because the ordinance has subsequently been held to have been preempted by the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.; the Costa-Hawkins Act).

There is no change in judgment.

The opinion in the above-entitled matter filed on January 30, 2015, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


Date: _____

                          Pollak, Acting P.J.

11

Trial court: Alameda County Superior Court

Trial judge: Honorable Ioana Petrou

Counsel for plaintiff and respondent: BAIRD HOLM LLP
David C. Levy

Counsel for defendant and appellant: BERKELEY CITY ATTORNEY'S OFFICE
Zach Cowan, City Attorney
Laura McKinney, Deputy City Attorney