Filed 11/26/25

**CERTIFIED FOR PUBLICATION**


# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE


| | |
|---|---|
| JOSE LUIS RODRIGUEZ et al., | B337221, B341105 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 23STCV21920) |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |


Appeal from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Affirmed.

Sinclair Braun Kargher, Kevin S. Sinclair, and Andrew H. Steinberg for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Supervising Assistant City Attorney, and Merete Rietveld, Deputy City Attorney, for Defendants and Respondents.

_____

The state density bonus law (Gov. Code,[1] §§ 65915-65918) " ' "reward[s] a developer who agrees to build a certain percentage of low-income housing with the opportunity to build more residences than would otherwise be permitted by the applicable local regulations." [Citation.]' " (*Wollmer v. City of Berkeley* (2011) 193 Cal.App.4th 1329, 1339-1340.)

In 2005, the City of Los Angeles by and through the Housing Department (the City) granted nonparty Jose Benavidez a 35 percent density bonus for the development of residential units on his property located at 443 West 49th Street in Los Angeles (the property). The density bonus allowed Benavidez to develop one more unit than otherwise would be authorized, resulting in a three-unit project. In exchange, Benavidez agreed to rent one of the three units exclusively to low-income households for at least 30 years. Benavidez and the City memorialized these terms in a written agreement, which the City recorded against the property in January 2006.

Benavidez had borrowed approximately $240,000 against the property in 2005, and in 2013, the lender foreclosed on the property. In 2019, appellants Jose Luis Rodriguez and Guillermina Rodriguez purchased the property, allegedly unaware of the 2006 agreement. And in 2023, after the City sent a notice demanding they comply with the agreement, the Rodriguezes brought an action for quiet title and declaratory relief against the City.

Their complaint alleged that because Benavidez's lender recorded its lien against the property before the City recorded the 2006 agreement, the agreement was "a junior encumbrance

---

[1] Unless otherwise specified, subsequent statutory references are to the Government Code.

against the property" extinguished by the 2013 foreclosure. (Capitalization omitted.) The trial court rejected this theory and sustained the City's demurrer to the complaint with prejudice.

The Rodriguezes now ask us to reinstate their complaint. We decline to do so because we conclude the 2006 agreement is equivalent to a "condition attached to a . . . permit" (§ 65009, subd. (c)(1)(E)), and the agreement therefore survived the foreclosure. (See *City of Berkeley v. 1080 Delaware, LLC* (2015) 234 Cal.App.4th 1144, 1151 (*1080 Delaware*).)

Accordingly, we affirm.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

We summarize here only the facts and procedural history relevant to our resolution of this appeal. Because in reviewing an order sustaining a demurrer, we must assume the truth of the properly pleaded factual allegations in the operative pleading (see *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1087–1091 (*Doan*)), we draw portions of our factual summary from the complaint.

In early 2005, Benavidez borrowed $244,000 from Accredited Home Lenders, Inc. (Accredited) secured by a mortgage on the property. The resulting deed of trust required that Benavidez "promptly discharge any lien which ha[d] priority" over Accredited's lien on the property. It further required that Benavidez "defend generally the title to the property against all claims and demands, subject to any encumbrances of record." (Capitalization omitted.)

But nothing in the deed of trust prohibited Benavidez from improving the property or from obtaining the necessary permits to do so. To the contrary, the deed of trust expressly contemplated that Benavidez might develop the property,

3

providing in pertinent part:  "Borrower irrevocably grants and conveys . . . the . . . property . . . together with all the improvements now or hereafter erected on the property."  (Capitalization omitted.)  On February 28, 2005, Accredited recorded the deed of trust against the property.

Also in 2005, Benavidez applied for a building permit under Los Angeles Municipal Code section 12.22.A.25, the municipal code provision that set forth the procedures for implementing the state density bonus law.  The City approved Benavidez's application and authorized him to develop one more unit than otherwise would be allowed—the "restricted unit"—in exchange for his agreement to rent the unit to low-income persons for a period of at least 30 years.

On June 16, 2005, Benavidez and the City executed "City of Los Angeles Agreement Number 108560 of City Contracts Relating to a Rental Covenant and Agreement," which stated its "purpose" was "to assure that the owner complies with the requirements of the Affordable Housing Incentives Program . . . establishing a by-right process for granting up to a 35 [percent] density bonus."  (Capitalization omitted.)

In addition, under the heading "Fundamental Provisions," the agreement set forth the building permit number and provided that the "total number of residential units in the project" would be three, including one "restricted unit."  (Capitalization omitted.)  And as relevant here, the agreement further provided:

"[Recital] B.  Owner intends to develop or rehabilitate multiple residential units on the property (hereinafter 'the project').  In connection therewith, owner has received all necessary ministerial and discretionary approvals required for the proposed project.  The issuance of a building permit,

4

associated with the Affordable Housing Incentives Program Application, requires, among other matters, that the owner and the City enter into an agreement with respect to the operation, maintenance and rental of restricted unit(s) for rent at affordable prices as defined.

"[¶] . . . [¶]

"Now, therefore, in consideration of the mutual covenants and provisions contained herein, the parties agree as follows:

"[¶] . . . [¶]

" . . . If the property is transferred in any manner or is acquired at a foreclosure sale under any deed of trust or mortgage encumbering the building or by deed in lieu of foreclosure prior to the time the restricted unit(s) are constructed title to the building shall be taken subject to the limitations provided for herein.

" . . . If the restricted unit(s) are transferred in any manner or are acquired at a foreclosure sale as a result of an involuntary transfer, then the transferee, as owner, shall be subject to all the conditions, limitations and restrictions provided for in this agreement.

"[¶] . . . [¶]

" . . . This agreement shall be an equitable servitude and a covenant running with the land as a burden on the property [and] shall be binding upon the owner and its successors and assigns in ownership of the property . . . .

"[¶] . . . [¶]

" . . . The covenants and conditions herein contained shall run with and burden the property for a period not less than 30 years from the date of the certificate of occupancy in accordance with the provisions hereof." (Capitalization omitted.)

The City recorded the agreement against the property on January 18, 2006 (hereafter, the 2006 agreement)—i.e., approximately 11 months after Accredited recorded its deed of trust.

Eight years later, in 2013, Benavidez defaulted on his loan from Accredited, and HSBC Bank USA (which had become the beneficiary of Accredited's deed of trust) foreclosed on the property. At some point, an entity called 443 Figsaj LLC acquired the property, and on July 30, 2019, the Rodriguezes purchased the property from Figsaj. The Rodriguezes contend they were not aware of the 2006 agreement at the time, notwithstanding that it had been recorded against the property more than a decade earlier.[2]

On February 7, 2023, the City sent the Rodriguezes a notice demanding they comply with the 2006 agreement by providing a land use compliance report for the property.

In response, on September 12, 2023, the Rodriguezes filed a complaint against the City asserting claims for quiet title and declaratory relief. The complaint alleged that "[b]ecause the Accredited [deed of trust was] recorded against the title to the property long before the [2006 agreement], the [deed of trust] constituted a senior lien against the property, and the [2006 agreement] a junior encumbrance against the property." (Capitalization omitted.) The complaint further alleged that

---

[2] At oral argument, the Rodriguezes argued for the first time that a title search for the property would not have uncovered the 2006 agreement because when a buyer takes title through foreclosure, the title company does not search for any encumbrances postdating the foreclosing entity's lien. For purposes of this appeal, we need not determine whether the Rodriguezes are correct on this point.

"[w]hen HSBC foreclosed, it extinguished all junior interests in the property, including the [2006 agreement]," and that the Rodriguezes thus brought "the instant action to quiet title to the property . . . , and to obtain a judicial declaration that they own the property free and clear of the [2006 agreement]." (Capitalization omitted.)

The Rodriguezes attached as exhibits to the complaint Accredited's deed of trust, the 2006 agreement, HSBC's 2013 deed in lieu of foreclosure, the 2019 grant deed transferring the property to them, and a Spanish translation of the complaint.[3] They did not attach the underlying permit referenced in the 2006 agreement.

The City demurred to the complaint. It argued the 2006 agreement was a covenant running with the land and that "some authority [supports] that a covenant running with the land is not subject to foreclosure even if recorded after a deed of trust later foreclosed upon." The City, however, "acknowledge[d] there is contrary authority." The City further argued, as alternative grounds for sustaining its demurrer, that the 2006 agreement constituted an exercise of the City's police power and thus survived the foreclosure; equitable considerations and the purpose of the density bonus law supported the City's position; and the statute of limitations barred the Rodriguezes' complaint.

The trial court sustained the City's demurrer without leave to amend, concluding the 2006 agreement was a covenant running with the land that survived the 2013 foreclosure.

---

[3] The Rodriguezes describe themselves as "Spanish language speakers" who used the Spanish translation to verify the complaint.

The Rodriguezes timely appealed.[4]

## DISCUSSION

### A.  *Standard of Review*

We review a trial court's decision sustaining a demurrer de novo.  (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)  We assume the truth of the properly pleaded factual allegations in the operative complaint and, based on those allegations, determine whether a valid cause of action is stated under any legal theory.  (See *Doan, supra*, 195 Cal.App.4th at pp. 1087–1091.)  "We also consider matters that may be judicially noticed and facts appearing in any exhibits attached to the complaint."  (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 400.)  Finally, "[w]e review the trial court's ruling, not its reasoning."  (*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886, 891.)

### B.  *The Court Properly Dismissed the Rodriguezes' Claims with Prejudice*

In seeking reversal of the order dismissing their claims, the Rodriguezes argue their complaint presents a straightforward challenge to a junior lien—the 2006 agreement—recorded against the property.  Their argument proceeds as follows:  (1) the 2006 agreement is either a covenant or an equitable servitude, (2) the

---

[4] The Rodriguezes initially filed a premature notice of appeal from the court's order sustaining the City's demurrer (case No. B337221).  They later filed a timely notice of appeal from the judgment dismissing their complaint with prejudice (case No. B341105).  We consolidated the appeals for purposes of record preparation, briefing, oral argument, and decision.

8

City recorded the 2006 agreement after the bank recorded its deed of trust against the property, and the agreement therefore is a junior lien, (3) as a result, when the bank foreclosed on the property, that foreclosure extinguished the 2006 agreement, and (4) the trial court misread the relevant authorities concerning the effect of a foreclosure on a covenant or equitable servitude recorded after a lender's deed of trust.

The City counters that, in reality, the Rodriguezes seek to challenge a "condition attached to a . . . permit" (§ 65009, subd. (c)(1)(E)), and that such conditions survive foreclosure. As a result, the City urges, "[e]ven if the foreclosure extinguished the rent restriction recorded in the [2006] agreement, [the Rodriguezes] are still required to abide by the permit conditions for the density bonus." (Capitalization omitted.)

We conclude the 2006 agreement itself is equivalent to a condition attached to a permit, and the agreement therefore survived the foreclosure. Accordingly, we agree with the City that the court properly sustained its demurrer.

" 'It is well settled that the burdens of permits run with the land once the benefits have been accepted.' " (*Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 832; see *Ojavan Investors, Inc. v. California Coastal Com.* (1994) 26 Cal.App.4th 516, 526 [same].) Subject to exceptions inapplicable here, section 65009 provides that any challenge to the "validity of any condition attached to a . . . permit" must be brought within 90 days of its issuance. (§ 65009, subd. (c)(1)(E).) After that period, no such challenge may "be maintained . . . by *any person*" (*id.*, subd. (c)(1), italics added; see *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 765 ["section 65009 establishes a short statute of limitations, 90 days," "to alleviate the 'chilling

9

effect on the confidence with which property owners and local governments can proceed with projects' "].)

Rather, the permit conditions remain enforceable against even successor property owners who were not parties to the original permit and who obtained the property following a foreclosure. (*See 1080 Delaware, supra*, 234 Cal.App.4th at p. 1151 [permit condition remained enforceable against successor owner who purchased property from foreclosing lender], request for order directing depublication denied June 17, 2015, S225256; see also *Sierra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 668 (*Sierra*) [permit condition enforceable against successor property owner who was not a party to the permit].)

We agree with the City that *1080 Delaware* is instructive here. In that case, a developer obtained a permit to construct a mixed-used residential project in the City of Berkeley. (*1080 Delaware, supra*, 234 Cal.App.4th at p. 1146.) The permit, issued in 2004, included a condition requiring the builder to comply with Berkeley's inclusionary housing ordinance. (*Ibid.*) Nothing in the decision indicates the bank that financed the development agreed to (or even knew of) the permit condition.

Several years later, the developer experienced financial difficulties, and in 2010, he entered a settlement agreement with the bank that financed the property. (*1080 Delaware, supra*, 234 Cal.App.4th at p. 1147.) Pursuant to the settlement, the developer executed a deed in lieu of foreclosure transferring title to the property to the bank, but the bank agreed not to record the instrument unless the developer failed to meet the terms of the settlement agreement. (*Ibid.*)

In August 2011, before the developer defaulted and the bank recorded the deed in lieu of foreclosure, the developer

10

entered a "regulatory agreement" with Berkeley that specified which units in the project would be designated "inclusionary units" and rented to low-income households.  (*1080 Delaware*, *supra*, 234 Cal.App.4th at p. 1147, capitalization omitted.)  The bank then recorded the deed in lieu of foreclosure and, in 2013, sold the property to 1080 Delaware, LLC.  (*Ibid.*)

Before purchasing the property, 1080 Delaware wrote a letter to the City of Berkeley stating that, if it went forward with the purchase, it did not intend to comply with the inclusionary housing ordinance.  (*1080 Delaware*, *supra*, 234 Cal.App.4th at p. 1147.)  After 1080 Delaware completed its purchase of the property, Berkeley filed suit against the company to force its compliance.  (*Id.* at p. 1148.)  In the ensuing litigation, 1080 Delaware argued that the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.) preempted the ordinance, and the permit and regulatory agreement requiring compliance with the ordinance therefore were void and unenforceable.  (*1080 Delaware*, *supra*, 234 Cal.App.4th at p. 1148.)  The company further argued that the regulatory agreement " '[d]oes not bind 1080 Delaware, a successor to an institutional lender who took title by deed in lieu of foreclosure' " (*ibid.*) because the regulatory agreement provided expressly that " ' "any party, and its successors and assigns, receiving title to an inclusionary unit through a . . . deed in lieu of foreclosure . . . , or by any conveyance or transfer thereafter, shall receive the title free and clear of the provisions of this regulatory agreement." ' " (*Id.* at p. 1147, fn. 2, capitalization omitted.)

The trial court held in favor of Berkeley and directed 1080 Delaware to abide by the permit condition mandating compliance with the inclusionary housing ordinance.  (*1080 Delaware*, *supra*, 234 Cal.App.4th at p. 1149.)  The appellate court affirmed.  (*Id.*

11

at p. 1146.) It concluded that, notwithstanding the preemptive effect of the Costa-Hawkins Rental Housing Act, Berkeley could "enforce the condition of the use permit, the validity of which was not challenged in the many years since the permit was issued." (*Ibid.*) The court explained, in pertinent part:

"[T]he conditions of the permit remain enforceable against a subsequent owner of the property. '[Because 1080 Delaware's] predecessors in interest waived their right to challenge the permit's . . . condition because they specifically agreed to and complied with the condition and accepted the benefits afforded by the permits and such predecessors in interest could not transfer or assign to [1080 Delaware] any legal rights greater than they themselves possessed [citations], [1080 Delaware] obtained the property in question with the same limitations and restrictions which bound [its] predecessors in interest . . . . [1080 Delaware has] waived, by [its] purchase of deed-restricted lots, any right to a property interest greater than that conveyed by their predecessors in interest. As with the analogous situation of covenants which run with the land [citation], [1080 Delaware] can take "only the title [the prior owner] had and subject to prior recorded instruments." [Citation.]' " (*1080 Delaware*, *supra*, 234 Cal.App.4th at p. 1151.)

Finally, the court concluded the parties' dispute concerning the enforceability of the regulatory agreement did not preclude summary judgment because "[e]ven if, as 1080 Delaware contends, the regulatory agreement [did] not survive the deed in lieu of foreclosure by which [the bank] acquired title, [the disputed permit] condition persists." (*1080 Delaware*, *supra*, 234 Cal.App.4th at p. 1152.)

The Rodriguezes do not contest *1080 Delaware*'s holding that, where a property owner accepts the benefits of a permit and

12

mounts no timely challenge to its conditions, the conditions run with the land, survive foreclosure, and are enforceable against successor property owners. They likewise do not dispute that Benavidez accepted the benefits of the permit here, including the density bonus, and never challenged the permit's conditions. Nor do they argue they can revive the lapsed 90-day period by challenging a permit condition through a claim for quiet title—a cause of action with unique accrual rules.[5] (Cf. *Sierra*, *supra*, 120 Cal.App.4th at p. 669 [party could not avoid statutory limitations period for challenging permit condition by styling action as one for inverse condemnation].)

Rather, the Rodriguezes contend the rules governing challenges to permit conditions are inapposite here because they do not seek to challenge a "condition attached to a . . . permit." (§ 65009, subd. (c)(1)(E).) They insist their action seeks "only . . . a determination regarding whether a particular equitable servitude [i.e., the 2006 agreement] remains enforceable," arguing "[t]he complaint does not even mention variances, conditional use permits, or other permits," and there is nothing "about any particular permit in the record." They therefore urge us to reject what they characterize as "the City's invitation to wade into giving an advisory opinion" concerning the enforceability of a permit condition. (Boldface & capitalization omitted.)

We are not persuaded. The Rodriguezes' complaint incorporates by reference and attachment the 2006 agreement,

---

[5] " '[Q]uiet title actions have special rules for when the limitations period begins to run.' [Citation.] ' " '[A]s a general rule, the statute of limitations [for a quiet title action] does not run against one in possession of land.' " [Citation.]' " (*Huang v. Wells Fargo Bank, N.A.* (2020) 48 Cal.App.5th 431, 438.)

13

which refers expressly to the relevant permit by its permit number.  The Rodriguezes do not dispute that the 2006 agreement exists only because of the permit, to aid in implementing the permit's requirements.  Indeed, this is apparent from the face of the 2006 agreement:  Recital B of the agreement provides, in pertinent part, that "[t]he issuance of a building permit . . . associated with the Affordable Housing Incentives Program . . . requires . . . that the [property] owner and the City enter into an agreement with respect to the operation, maintenance, and rental of restricted unit(s) for rent at affordable prices."  (Capitalization omitted.)  And the paragraph immediately following the recitals provides that the parties "*therefore* . . . agree as follows" (italics added), indicating the parties executed the 2006 agreement to fulfill the requirements for issuance of a building permit.  The Rodriguezes therefore are mistaken in arguing that the record contains nothing concerning "any particular permit."

Moreover, the permit itself is absent from our record only because of the Rodriguezes' strategic choices in framing their complaint—choices presumably aimed at pleading around the authorities holding that permit conditions survive foreclosure and are enforceable against successor owners.  And the Rodriguezes offer no support for the proposition that we may ignore the permit notwithstanding that its existence and pertinent conditions are referenced in the 2006 agreement attached to the complaint.

Finally, we are unpersuaded by the Rodriguezes' contention (raised for the first time at oral argument) that the *1080 Delaware* court's treatment of the regulatory agreement in that case counsels against treating the 2006 agreement here as equivalent to a permit condition.  Preliminarily, we observe that

14

*1080 Delaware* did not address whether an agreement implementing a permit's requirements may itself constitute a permit condition or its equivalent. (See *McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 611 ["[a] case is not authority for a proposition not considered therein or an issue not presented by its own particular facts"].) Further, the *1080 Delaware* regulatory agreement allegedly contained a provision stating it would extinguish upon foreclosure (*1080 Delaware*, *supra*, 234 Cal.App.4th at p. 1147, fn. 2)—a provision facially at odds with treating the agreement as the equivalent of a permit condition that survives foreclosure. The 2006 agreement, in contrast, provides expressly that its terms survive foreclosure. Thus, the terms of the 2006 agreement support treating it as the equivalent of a permit condition.

We therefore conclude the Rodriguezes' quiet title claim effectively seeks to challenge a condition attached to a permit. Because the Rodriguezes' sole theory is that foreclosure extinguished the challenged condition, and because we conclude such conditions survive foreclosure, the complaint fails to state a cause of action for quiet title. As the declaratory relief cause of action merely is derivative of the quiet title claim, it too fails. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80.) And because the Rodriguezes fail to identify any proposed amendments that would cure the complaint's defects, they are not entitled to leave to amend. (See *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145 ["The onus is on the *plaintiff* to articulate the 'specifi[c] ways' to cure the identified defect, and absent such an articulation, a trial or appellate court may grant leave to amend 'only if a potentially effective amendment [is] both apparent and consistent with the plaintiff's theory of the case.' [Citation.]")

15

In light of our conclusions, we need not address the City's remaining arguments.  Accordingly, we affirm.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



WEINGART, J.